**BRYAN CAVE LLP**
Stuart W. Price (SBN: 125918)
swprice@bryancave.com
Valerie K. Brennan (SBN: 248148)
valerie.brennan@bryancave.com
3161 Michelson Dr., Suite 1500
Irvine, California 92612-4414
Telephone: (949) 223-7000
Facsimile: (949) 223-7100

Attorneys for Defendants
MED-DEPOT, INC. and KENNETH BAKER

FILED
2010 AUG 25 PM 3:08
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA
BY: ______

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

| | |
|---|---|
| ALLIANCE FUNDING GROUP, a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MED-DEPOT, INC., an Oklahoma corporation; KENNETH BAKER, an individual; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No. **SACV10-01302 RNB**<br><br>(OCSC Case No. 30-2010-00392983)<br><br>**NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §§ 1441(B) AND 1446 (DIVERSITY)** |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Defendants MED-DEPOT, INC. ("Med-Depot") and KENNETH BAKER ("Baker") (collectively, "Defendants") remove to this Court the state court action described below pursuant to 28 U.S.C. §§ 1441 and 1446. In support of the Notice of Removal, Defendants state as follows:

**JURISDICTION**

1. On July 26, 2010, Plaintiff ALLIANCE FUNDING GROUP ("Plaintiff") filed a complaint ("Complaint") against Defendants in the Superior

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

Court of the State of California for the County of Orange, Case No. 30-2010-00392983, titled *Alliance Funding Group v. Med-Depot, Inc., et al.* (the "State Action"). A copy of all process and pleadings served on Defendants in the State Action, including the Summons and Complaint, are submitted with this Notice of Removal as Exhibit A.

2. Plaintiff served the Complaint on Defendants' statutory agent on August 10, 2010. This Notice of Removal is timely under 28 U.S.C. § 1446(B), as it is filed within thirty days after service on Defendants.

3. This Court has original jurisdiction over this action under 28 U.S.C. § 1332(a)(1), and therefore the action is one which may be removed to this Court by defendant pursuant to the provisions of 28 U.S.C. § 1441(b) in that

a. Plaintiff's allegations reveal that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, as measured by the value of the guarantees at issue. As set forth in the Complaint, Plaintiff seeks a judgment of at least $133,587.46 against Defendants based on the alleged breach of three contracts. (Complaint, ¶ 13, 20, 26, p. 6:11-7:7).

b. The matter in controversy is between citizens of different states. Plaintiff is a California corporation and alleges it maintains its principal place of business in California. (Complaint ¶ 3). Plaintiff further alleges Med-Depot is a Oklahoma corporation, and that Baker is a resident of Oklahoma. (Complaint ¶ 4, 5).

4. The United States District Court for the Central District of California is the District Court for the district embracing the County of Orange in California, where the State Action is currently pending. *See* 28 U.S.C. § 84(c)(3).

5. Written notice of the filing of this Notice of Removal has been served contemporaneously upon counsel for Plaintiff, and a copy of this Notice of Removal will be filed with the Clerk of Superior Court, County of Orange, California, as required by 28 U.S.C. § 1446(d).

WHEREFORE, Defendants pray that the above-entitled action is removed from the Superior Court, County of Orange, State of California, to this Court, and that all further proceedings in this action be conducted in this Court as provided by law.

Dated: August 25, 2010

**BRYAN CAVE LLP**
Stuart W. Price
Valerie K. Brennan

By: [signature]
Valerie K. Brennan
Attorneys for Defendants
MED-DEPOT, INC. and KENNETH BAKER

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

# *NATIONAL REGISTERED AGENTS, INC.*

## *SERVICE OF PROCESS SUMMARY TRANSMITTAL FORM*

To: HEIDI HARGROVE
EVOLVE CAPITAL, LTD.
2200 ROSS AVENUE
SUITE 4050
DALLAS, TX 75201

SOP Transmittal # OK15681

(800) 767-1553 - Telephone
(609) 716-0820 - Fax

Entity Served: MED-DEPOT, INC. (Domestic State: OKLAHOMA)

Enclosed herewith are legal documents received on behalf of the above captioned entity by National Registered Agents, Inc. or its Affiliate in the State of OKLAHOMA on this 10 day of August , 2010 . The following is a summary of the document(s) received:

1. **Title of Action:** ALLIANCE FUNDING GROUP V MED DEPOT INC

2. **Document(s) served:** Summons/Citation/Third Party Summons, Complaint/Petition/Third Party Complaint

3. **Court of Jurisdiction/ Case & Docket Number:** SUPERIOR COURT OF CALIFORNIA COUNTY OF ORANGE 00392983

4. **Amount Claimed, if any:**

5. **Method of Service** (select one):
X Personally served by: X Process Server __ Deputy Sheriff __ U. S Marshall
__ Delivered Via: __ Certified Mail (Envelope enclosed) __ Regular Mail (Envelope enclosed) __ Facsimile
__ Other (Explain):

6. **Date and Time of Receipt:** 8/10/2010 4:08:02 PM EST (GMT -5)

7. **Appearance/Answer Date:** 20 Days

8. **Received From:** (Name, Address & Telephone Number) CARA J HAGAN
110 E WILSHIRE AVENUE SUITE 405
FULLERTON CALIFORNIA 92832
714 526 3377

9. **Federal Express Airbill #** 790722092219

10. **Call Made to:** HEIDI HARGROVE

11. **Special Comments:**

**NATIONAL REGISTERED AGENTS, INC.**

**Copies To:**

Transmitted by Noleen Wilson

The information contained in this Summary Transmittal Form is provided by National Registered Agents, Inc. for informational purposes only and should not be considered a legal opinion. It is the responsibility of the parties receiving this form to review the legal documents forwarded and to take appropriate action.

ORIGINAL

CM-010

[PAR]TY WITHOUT ATTORNEY (Name, State Bar number, and address):
[CARA J. H]AGAN/ANDREA M. DUMOND, SB No. 146665/258948
[... ASSO]CIATES
[...] Avenue, Suite 405
[... C]A 92832
[TEL]EPHONE NO.: 714-526-3377 FAX NO.: 714-526-3317
[ATTOR]NEY FOR (Name): Plaintiff

FOR COURT USE ONLY

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

JUL 26 2010

ALAN CARLSON, Clerk of the Court

BY B. LEA, DEPUTY

[SU]PERIOR COURT OF CALIFORNIA, COUNTY OF Orange
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS: 700 Civic Center Drive West
CITY AND ZIP CODE: Santa Ana, CA 92701
BRANCH NAME: Central Justice Center

CASE NAME:
Alliance Funding Group v. Med-Depot, Inc.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000) [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | 30-2010 00392983<br>JUDGE: JUDGE GLENDA SANDERS C-17 |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [X] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [ ] is [X] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   - a. [ ] Large number of separately represented parties
   - b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   - c. [ ] Substantial amount of documentary evidence
   - d. [ ] Large number of witnesses
   - e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   - f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. [X] monetary b. [X] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action *(specify)*: Three (3)
5. This case [ ] is [X] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: July 20, 2010

CARA J. HAGAN/ANDREA M. DUMOND
(TYPE OR PRINT NAME)

Andrea M Dumond
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

NOTICE

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]
CIVIL CASE COVER SHEET
Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10

Exhibit A - Page 5

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
- Auto (22)–Personal Injury/Property Damage/Wrongful Death
- Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/Wrongful Death
- Product Liability *(not asbestos or toxic/environmental)* (24)
- Medical Malpractice (45)
  - Medical Malpractice–Physicians & Surgeons
  - Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
- Defamation (e.g., slander, libel) (13)
- Fraud (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice *(not medical or legal)*
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  - Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  - Negligent Breach of Contract/Warranty
  - Other Breach of Contract/Warranty
- Collections (e.g., money owed, open book accounts) (09)
  - Collection Case–Seller Plaintiff
  - Other Promissory Note/Collections Case
- Insurance Coverage *(not provisionally complex)* (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
- Asset Forfeiture (05)
- Petition Re: Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10)
- Claims Involving Mass Tort (40)
- Securities Litigation (28)
- Environmental/Toxic Tort (30)
- Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
  - Confession of Judgment *(non-domestic relations)*
  - Sister State Judgment
  - Administrative Agency Award *(not unpaid taxes)*
  - Petition/Certification of Entry of Judgment on Unpaid Taxes
  - Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint *(not specified above)* (42)
  - Declaratory Relief Only
  - Injunctive Relief Only *(non-harassment)*
  - Mechanics Lien
  - Other Commercial Complaint Case *(non-tort/non-complex)*
  - Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition *(not specified above)* (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief From Late Claim
  - Other Civil Petition

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

JUL 26 2010

ALAN CARLSON, Clerk of the Court

BY B. LEA, DEPUTY

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***
MED-DEPOT, INC., an Oklahoma corporation; KENNETH BAKER, an individual; and DOES 1 through 20, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***
ALLIANCE FUNDING GROUP, a California corporation

**You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.**

**There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.**

***Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.***

***Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.***

The name and address of the court is:
*(El nombre y dirección de la corte es):*
SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE,
700 Civic Center Drive West, Santa Ana, California 92702
CENTRAL JUSTICE CENTER

CASE NUMBER:
(Número del Caso): 30-2010 00392983

JUDGE GLENDA SANDERS C-17

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
HAGAN & ASSOCIATES/CARA J. HAGAN/ANDREA M. DUMOND, SBN 146665/258948
110 E. Wilshire Avenue, Suite 405, Fullerton, California 92832 - 714.526.3377

DATE: *(Fecha)* JUL 26 2010 ALAN CARLSON Clerk, by *(Secretario)* BRITTNEY LEA, Deputy *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☐ on behalf of *(specify)*:

under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify)*:

4. ☐ by personal delivery on *(date)*:

Form Adopted for Mandatory Use
Judicial Council of California

Cara J. Hagan, Bar No. 146665
Andrea M. Dumond, Bar No. 258948
HAGAN & ASSOCIATES
110 E. Wilshire Avenue, suite 405
Fullerton, California 92832

Telephone: (714) 526-3377
Facsimile: (714) 526-3317

Attorney for Plaintiff,
ALLIANCE FUNDING GROUP

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

JUL 26 2010

ALAN CARLSON, Clerk of the Court

BY B. LEA, DEPUTY

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF ORANGE, CENTRAL JUSTICE CENTER**

**UNLIMITED JURISDICTION**

ALLIANCE FUNDING GROUP, a California corporation,

Plaintiff

vs.

MED-DEPOT, INC., an Oklahoma corporation; KENNETH BAKER, an individual; and DOES 1 through 20, inclusive,

Defendants.

CASE NO. 30-2010 00392983

JUDGE GLENDA SANDERS C17

**COMPLAINT FOR DAMAGES:**
1. **BREACH OF CONTRACT**
2. **OPEN BOOK ACCOUNT**
3. **COMMON COUNTS**

COMES NOW, Plaintiff, ALLIANCE FUNDING GROUP, ~~INC.~~, a California corporation ("PLAINTIFF"), and alleges as follows:

1. Venue lies before this Court as the Defendants agreed to have jurisdiction in the State of California.

2. The amount in controversy exceeds $25,000.00.

3. Plaintiff currently and at all relevant times mentioned herein maintains its principal place of business in the City of Orange, County of Orange, State of California.

4. Plaintiff is informed and believes and therefore alleges that at all relevant times

mentioned herein, Defendant MED-DEPOT, INC., ("DEFENDANT"), is and was an Oklahoma corporation, located in the City of Oklahoma, State of Oklahoma.

5. Plaintiff is informed and believes and therefore alleges that at all relevant times mentioned herein, Defendant KENNETH BAKER ("DEFENDANT"), is and was an individual, residing in the City of Oklahoma, State of Oklahoma

6. The true names and capacities of Defendant Does 1 through 20 are unknown to Plaintiff, and therefore Plaintiff sues them by such fictitious names. Plaintiff will seek leave of court to insert their true names and capacities when they have been ascertained.

7. Plaintiff is informed and believes and therefore alleges that each Defendant was the employee, agent and servant of each of the other Defendants with full knowledge of the events and actions alleged in this Complaint, and that each was acting within the course and scope of their authority as such and with the consent of each other Defendant.

## GENERAL ALLEGATIONS

8. Plaintiff incorporates herein each and every allegation contained in paragraphs 1 through 7, inclusive, as they are stated above.

9. On or about November 8, 2006, Defendant Med-Depot, Inc., entered into an equipment lease agreement ("Lease 1") with Plaintiff. A true and correct copy of said lease agreement is attached hereto as "Exhibit A" and incorporated herein by this reference.

10. The Lease was for medical rental equipment at a rate of $2,785.84 per month for thirty-six (36) months.. (See "Exhibit A").

11. Prior to the expiration date for the Lease, Defendants failed to terminate the lease. As such, on or about November 7, 2009, the lease renewed for another twelve (12) month term at the original rate. (See "Exhibit A").

12. Defendants initially complied with certain payment obligations but then defaulted on or about January 1, 2010.

13. The amount of $35,240.90 remains due, owing and unpaid on the lease, including

past payments and late fees, future payments, discounted to present value, but excluding interests, fees and costs.

14. The lease provides that all sums due and owing become due and payable upon default, the financee must return equipment to the financor and remains responsible not only for the sums owing, but all costs and expenses incurred in taking, moving, repairing, etc. the equipment. The lease further provides for the recovery of attorney fees and costs, and recovery of accrued interest at the rate of eighteen percent (18%) per annum on all past due balances. (See "Exhibit A").

15. Kenneth Baker personally guaranteed the debt. (See "Exhibit A").

16. On or about November 8, 2006, the parties entered into a second lease agreement ("Lease 2") with Plaintiff. A true and correct copy of said lease agreement is attached hereto as "Exhibit B" and incorporated herein by this reference.

17. The Lease was for medical rental equipment at a rate of $2,182.96 per month for thirty-six (36) months.. (See "Exhibit B").

18. Prior to the expiration date for the Lease, Defendants failed to terminate the lease. As such, on or about November 7, 2009, the lease renewed for another twelve (12) month term at the original rate. (See "Exhibit B").

19. Defendants initially complied with certain payment obligations but then defaulted on or about January 1, 2010.

20. The amount of $27,520.86 remains due, owing and unpaid on the lease, including past payments and late fees, future payments, discounted to present value, but excluding interest, fees and costs.

21. The lease provides that all sums due and owing become due and payable upon default, the financee must return equipment to the financor and remains responsible not only for the sums owing, but all costs and expenses incurred in taking, moving, repairing, etc. the equipment. The lease further provides for the recovery of attorney fees and costs, and recovery of accrued interest at the rate of eighteen percent (18%) per annum on all past due balances. (See "Exhibit B").

22. Kenneth Baker personally guaranteed the debt. (See "Exhibit B").

23. On or about July 31, 2008, the parties entered into a third lease agreement

("Lease 3") with Plaintiff. A true and correct copy of said lease agreement is attached hereto as "Exhibit C" and incorporated herein by this reference.

24. The Lease was for medical equipment and home healthcare equipment at a rate of $4,522.72 per month for twenty-four (24) months.. (See "Exhibit C").

25. Defendants initially complied with certain payment obligations but then defaulted on or about October 1, 2009

26. The amount of $70,825.70 remains due, owing and unpaid on the lease, including past payments and late fees, future payments, discounted to present value, and Plaintiff's residual interest, but excluding accrued interest, fees and costs.

27. The lease provides that all sums due and owing become due and payable upon default, the financee must return equipment to the financor and remains responsible not only for the sums owing, but all costs and expenses incurred in taking, moving, repairing, etc. the equipment. The lease further provides for the recovery of attorney fees and costs, and recovery of accrued interest at the rate of eighteen percent (18%) per annum on all past due balances. (See "Exhibit C").

28. Kenneth Baker personally guaranteed the debt. (See "Exhibit C").

**FOR A FIRST SEPARATE CAUSE OF ACTION**
**FOR BREACH OF CONTRACT**
**AGAINST ALL DEFENDANTS**

29. Plaintiff incorporates herein each and every allegation contained in paragraphs 1 through 28, inclusive, as they are stated above.

30. On or about November 8, 2006 and July 31, 2008, Defendants entered into the above-mentioned leases with Plaintiff.

31. On or about January 1, 2010, Defendants discontinued making their monthly rental payments on that Leases1 and 2 and Defendants' Leases1 and 2 entered default status.

32. On or about October 1, 2009, Defendants discontinued making their monthly rental payments on Lease 3 and Defendants' Lease 3 entered default status.

33. The total sum of $133,587.46, as calculated through July 20, 2010, remains past due and owing.

34. Plaintiff has performed all obligations required to be performed under the agreement,

except that which has been prevented or excused by the acts or omissions of Defendants.

35. Plaintiff is entitled to the principal sum then due of $133,587.46, including all past due balances, future balances discounted to the present rate, late fees, costs and any and all residual interest. Plaintiff maintains interest in the equipment, together with interest pursuant to the terms of the written contract, to be established at the time of trial, until judgment is entered, at the legal rate of ten percent (10%) or the contract rate of eighteen percent (18%), whichever is applicable.

**FOR A SECOND SEPARATE CAUSE OF ACTION**
**OPEN BOOK ACCOUNT**
**AGAINST ALL DEFENDANTS**

36. Plaintiff incorporates herein each and every allegation contained in paragraphs 1 through 35, inclusive, as they are stated above.

37. On or about October 1, 2009 and January 1, 2010, and continuing to the present, Defendants became indebted on an open book account to Plaintiff. Defendants defaulted on $133,587.46. After all credits were applied, $133,587.46 remains on said open book account together with interest pursuant to the terms of the written contract, until judgment is entered, at the legal rate of ten percent (10%) or the contract rate of eighteen percent (18%), whichever is applicable.

38. Although diverse demands were made therefore, said Defendants have failed and neglected to pay same, the entire sum is now due, owing and unpaid.

39. *California Civil Code Section* 1717.5 provides the basis for a statutory award of attorney fees. A written contract between the parties provides for the recovery of attorney fees. (See "Exhibits A, B and C").

**FOR A THIRD SEPARATE CAUSE OF ACTION**
**COMMON COUNTS**
**AGAINST ALL DEFENDANTS**

40. Plaintiff incorporates herein each and every allegation contained in paragraphs 1 through 39, inclusive, as they are stated above.

41. On or about October 1, 2009 and January 1, 2010, and continuing to the present, Defendants became indebted on an account stated to Plaintiff for $133,587.46 pursuant to the terms of a written agreement. On or about October 1, 2009 and January 1, 2010, and continuing to the present, Defendants defaulted and $133,587.46 is left owing. Accordingly, Plaintiff is entitled to this amount, plus interest at the legal rate of ten percent (10%) or the contract rate of eighteen percent (18%), whichever is applicable, until judgment is entered.

42. Although diverse demands were made therefore, said Defendants have failed and neglected to pay same, and the entire sum is now due, owing and unpaid to prevent the unjust enrichment of each said defendants.

**WHEREFORE, PLAINTIFF PRAYS FOR JUDGMENT TO BE ENTERED AS FOLLOWS:**

**ON THE FIRST CAUSE OF ACTION**

1. For judgment against all Defendants, in an amount subject to proof at trial or in the minimum sum of $133,587.46;

2. For interest pursuant to the terms of the written contract, until judgment is entered, at the legal rate of ten percent (10%) or the contract rate of eighteen percent (18%), whichever is applicable;

**ON THE SECOND CAUSE OF ACTION**

3. For judgment against all Defendants, in an amount subject to proof at trial or in the minimum sum of $133,587.46;

4. For interest pursuant to the terms of the written contract, until judgment is entered, at the legal rate of ten percent (10%) or the contract rate of eighteen percent (18%), whichever is applicable;

**ON THE THIRD CAUSE OF ACTION**

5. For judgment against all Defendants, in an amount subject to proof at trial or in the minimum sum of $133,587.46;

6. For interest pursuant to the terms of the written contract, until judgment is entered, at the

legal rate of ten percent (10%) or the contract rate of eighteen percent (18%), whichever is applicable;

ON ALL CAUSES OF ACTION

7. The costs of collection;

8. For all costs of suit;

9. For attorney fees pursuant to the lease or *California Civil Code Section 1717.5*;

10. For such other relief as the court deems just and proper.

DATED: July 20, 2010

HAGAN & ASSOCIATES

By: Andrea M. Dumond
CARA J. HAGAN
ANDREA M. DUMOND,
Attorneys for Plaintiff Alliance Funding Group

# EXHIBIT A

AFG Alliance Funding Group
2099 S. State College Blvd, Ste 109
Anaheim, CA 92806

Phone (800) 978.8817
Fax (714) 704.1448
Url www.alliancefunds.com

LEASE AGREEMENT
Lease Number.
06-2793

| Full Legal Name and Address of Lessee | Name and address of Equipment Supplier |
|---|---|
| Med-Depot, Inc.<br>5529 D N W. 5th<br>Oklahoma City, OK 73127 | |

| Lessee Phone Number | Lessee Tax ID | Equipment Supplier Phone Number |
|---|---|---|
| 800-299-9277 | 73-1541710 | |

| Quantity | Equipment Description |
|---|---|
| | See attached Exhibit 'A |

| Monthly Rent (Plus applicable taxes if any) | Base Term in Months | Deposit Applied To | Security Deposit (if any) |
|---|---|---|---|
| $2,785 84 | 36 | First and Last Payment | $0 00 |

| Equipment Location (if other than billing address) | City | State | Zip |
|---|---|---|---|
| | | | |

Please read this Lease Agreement and any schedules attached (Lease) carefully since it represents the entire agreement We have written the Lease in plain language because we want you to fully understand its terms For purposes of this Lease you and your shall mean the Lessee indicated above, and we, us and our refer to Lessor, Alliance Funding Group, its agents and employees ,successors and assigns.

END OF LEASE OPTIONS: You will have the following options at the end of the original term provided the lease has not terminated early and no event of default under the lease has occurred and is continuing 1. Purchase the equipment for fair market value. 2. Renew the lease per Paragraph 16 3. Return the equipment as provided in Paragraph 16 of this lease

The undersigned agrees that this lease reflects the agreement of the parties, including all terms of the reverse side of this document.

AGREED: Med-Depot Inc

By: X [signature]
Kenny Baker : President
Date: 11/02/06

AGREED: Alliance Funding Group

By: X [signature]
Funding Manager
Date: 11/08/06

Company Resolution: The undersigned certifies that he/she the duly elected and qualified Secretary of Med-Depot, Inc. (the "Company"), hereby certify that Company's exact legal name, state of incorporation/organization, location of its chief executive officer and/or its place of residence, as applicable, have been correctly identified to Lessor, and that at a duly constituted meeting of the Board of Directors/Members/Partners of the Company, the Board resolved that Kenny Baker, in his/her capacity as President, is authorized for, on behalf of the company, to negotiate, procure and execute such Lease Agreements and any other documents in connection with same, which is his / her opinion are necessary or advisable to effectuate the most favorable interests of the Company and the execution of such documents by said officer shall be conclusive evidence of his/her approval thereof

IN WITNESS WHEREOF, I have affixed my name as Secretary of the Company on 11/02/06

Legal Name
Med-Depot, Inc.
Date: 11/02/06

Signature
X [signature]
CORPORATE SECRETARY SIGNATURE
Title: Corporate Secretary

LEASE GUARANTY: For the purposes of this Guaranty, I/ME/MY shall mean the person making the guaranty and if married his or her marital community YOU/YOUR shall mean the Lessor I agree that I have an interest in the Lessee, economic or otherwise, and that you would not enter into this Lease without this guaranty. I unconditionally guaranty that the Lessee will fully and promptly pay all its Obligations under the Lease and any future leases with you when they are due and will perform all its other obligations under the Lease even if you modify or renew the Lease, or if any payments made by the Lessee are rescinded or returned upon the insolvency, bankruptcy or reorganization of the lessee, as if the payment had not been made You do not have to notify me if the Lessee is in default under the Lease You may obtain any information from credit reporting agencies you deem necessary to enforce this guaranty. If the Lessee defaults, I will immediately pay in accordance with the default provisions of the Lease all obligations due under the Lease I agree that I will not be released or discharged if you: (i) fail to perfect a security interest in the Equipment or any other property which secures the Obligations of Lessee or me to you (Collateral); (ii) fail to protect the Collateral; or (iii) abandon or release the Collateral I agree that you do not have to proceed first against the Lessee or any Collateral. I hereby waive notice of acceptance of this guaranty and of all other notices or demands of any kind in which I may be entitled to except for demand for payment. I will reimburse all expenses you incur in enforcing your rights against Lessee or me, including, without limitation attorney's fees and costs I acknowledge that I have read and understood the Lease and this Guaranty. This is an irrevocable, continuing guaranty and binds my heirs, administrators and representatives. I CONSENT TO THE JURISDICTION OF THE COURTS HAVING JURISDUCTION OVER DISPUTES ARISING UNDER THE LEASE FOR THE DETERMINATION OF ALL DISPUTES UNDER THE LEASE AND THIS GUARANTY. I agree and consent that you may serve legal papers on you by registered or certified mail, which shall be sufficient to obtain jurisdiction. THE PARTIES EACH WAIVE TRIAL BY JURY IN ANY ACTION RELATING TO THE LEASE OR THIS GUARANTY. THIS GUARANTY WILL BE JOINTLY AND SEVERALLY RESPONSIBLE

Signature
X [signature]
Kenny Baker,
Date: 11/02/06

X ____________________

1. LEASE: You agree to lease from us and we agree to lease to you, the equipment listed above or on any schedule to this Lease (Equipment) You unconditionally promise to pay us the sum of all of the rental and other payments indicated above or on any schedule (Rent). You authorize us to insert in this lease any serial numbers and other identification data about the Equipment, as well as any other omitted factual matters or correct obvious errors. All Rent and other payments under this Lease or any other agreement with us (collectively Obligation (s) are payable in U.S dollars, and may be adjusted upward or downward no more than ten percent (10%) to reflect actual costs.

2. TERM OF LEASE: This Lease shall become effective upon acceptance by us by signing and dating this Lease A Prorated portion of the aggregated average of the Rent based on a daily charge of one-thirtieth (1/30) of the Rent from the date of the Equipment has been delivered to you ("Commencement Date") to the end of the month shall be payable at the Commencement Date. The Base Term of this Lease shall begin on the first day of the month following the Commencement Date and terminate upon the expiration of the number of months stated under Base Term, above. Following the Commencement Date, Rent and other Obligation payments are due on the first of each month. payable to a location to be designated in writing. YOUR OBLIGATION TO PAY RENT TO US IS UNCONDITIONAL AND NOT SUBJECT TO ANY REDUCTION, SET-OFF, DEFENSE OR COUNTERCLAIM AND MAY NOT BE CANCELED FOR ANY REASON WHATSOEVER. In the event this lease is not fully completed for any reason beyond our control, all deposits made by you will be retained by us as compensation for documentation, processing and other expenses. We have the right, but not the obligation, to electronically withdraw funds from your bank account to pay for any unpaid Rents, taxes, fees, charges and assessments You will provide us with any bank account information we request in order to process electronic payments You may revoke our authorization to electronically withdraw funds by giving us ten (10) days prior written notice

3. SECURITY DEPOSIT. As security for the payment of Rent, and performance of all the Obligations, you deposit with us the amount set forth in the section shown as "Security Deposit" In the event you shall default in the performance of any of the Obligations, we shall have the right, but shall not be obligated to apply the security deposit to the curing of such default. On the expiration or earlier termination of this Lease or any extension or renewal hereof, provided you have fully performed all of the provisions of this Lease, we will return to you any then remaining balance of the security deposit. We shall not be required to keep the security deposit separate from our general funds and you shall not be entitled to any interest on the security deposit

4. NO WARRANTIES; NO AGENCY: WE ARE LEASING THE EQUIPMENT TO YOU AS IS. WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF NON-INFRINGMENT, MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE OR ORDINARY USE IN CONNECTION WITH THIS LEASE. You understand and agree that we are independent from the vendor, manufacturer and/or supplier (Supplier) of the Equipment and that neither the Supplier nor any other person is our agent, nor are they authorized to waive or change any term or condition of this Lease. You agree that no representation, guaranty or warranty by the Supplier or other person is binding on us So long as you are not in default under any of the terms of this Lease, we transfer to you any warranties made to us, as the owner of the Equipment by the Supplier You agree that any breach by the Supplier will not relieve or excuse your obligations to us. Regardless of cause, you will not assert any claims whatsoever against us for loss of profits you expected to make or any other direct, consequential, special or indirect damages If you have entered into a maintenance agreement for the Equipment and the cost of the maintenance is included in the Rent, you acknowledged that we are not responsible for any service, repairs, or maintenance of the Equipment, and that we are not a party to the maintenance agreement. If you have a dispute regarding maintenance or service, then you will nevertheless continue to pay all Obligations as they become due

5. UCC-ARTICLE-2A: You agree that this Lease is a "Finance Lease" under Article 2A of the Uniform Commercial Code as adopted by the State of California (UCC). You acknowledge that: (a) we did not select, manufacture or supply the Equipment, but at your request we have purchased the Equipment that you are leasing from us You agree that you have approved any purchase or supply contract between us and the Supplier before signing this Lease; or, if you have entered in to a purchase contract for the Equipment, you agree to assign it to us effective when we pay for the Equipment You may have rights under the supply or purchase contract, and you may contact the Supplier for a description of those rights or any warranties To the extent permitted by applicable law, YOU WAIVE ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON YOU UNDER UCC 2A-303 AND 2A-508 THROUGH 2A-522, INCLUDING WITHOUT LIMITATION, THE RIGHT TO: (i) REPUDIATE THE LEASE AND REJECT THE EQUIPMENT; (ii) REVOKE ACCEPTANCE OF THE LEASE; OR (iii) RECOVER DAMAGES FROM US FOR ANY BREACH OF WARRANTY.

6. DELIVERY OF EQUIPMENT: You agree to accept [illegible]uipment when it is delivered and to sign the Equipment Acceptance [illegible] [illegible] by us We may at our discretion confirm by telephone that you have accepted the Equipment and this telephone verification of your acceptance of the Equipment shall have the same effect as a signed Equipment Acceptance

7. ASSIGNMENT: YOU MAY NOT SELL, TRANSFER, ASSIGN OR SUBLEASE THE EQUIPMENT WITHOUT OUR PRIOR WRITTEN APPROVAL We may sell, assign or transfer this Lease, or any part of it, and/or ownership of the Equipment without notifying you; and you agree that if we do, the new Lessor will have the same rights and benefits that we now have, and will not have to perform any of our obligations You agree that the rights of the new Lessor will not be subject to any claims, defenses or setoffs that you may have against us However any such assignment, sale, or transfer of this Lease or the Equipment will not relieve us of our obligations to you under this Lease

8. OWNERSHIP, RIGHTS, AND QUIET ENJOYMENT: You agree that we are the owner of and have title to the Equipment You agree, at your expense, to protect and defend our title and other rights to the Equipment Further, you agree that you will at all times keep the Equipment free from all legal process or lien if asserted or made against you or the Equipment You shall have the right to quiet use and enjoyment of the Equipment for the Term of this Lease, provided you are not in default We also have the right, at reasonable times to inspect the Equipment at your expense

9. CARE, USE AND LOCATION; LOSS OF EQUIPMENT: You are responsible for installing and keeping the Equipment in good working order and repair You will keep and use the Equipment only at your address shown on this Lease, only for business or commercial purposes and in compliance with all applicable laws, ordinances or regulations You will not make any alterations to the Equipment without our prior written consent, nor will you permanently attach the equipment to any real estate You are responsible for protecting the Equipment from damage, and from any other kind of loss while you have the Equipment or while it is being delivered to you In the event the equipment was lost, stolen or damaged, so long as you are not in default under this Lease, then you shall have the option within one week of such event to: (a) repair or replace the Equipment or (b) pay to us the unpaid balance of the remaining Rent under this Lease and our residual interest in the Equipment, discounted to present value at the rate of five percent (5%) plus any other Obligations

10. TAXES AND FEES: You agree to pay when due all taxes, fees, fines assessments and penalties relating to this Lease, including, without limitation documentation fees, filing fees, credit fees, equipment inspection fees, early termination or assumption fees, title fees, name change fees, sales or property taxes, use taxes and business taxes You also agree that we may estimate the yearly personal property taxes that will be due for the Equipment and you agree to pay us the estimated taxes together with a processing fee as invoiced by us If we pay any taxes fines or penalties for you. you agree to reimburse us. together with a processing fee, on demand

11. INDEMNITY: We are not responsible for any injuries or losses to you or any other person or property caused by the installation, operation, maintenance or use of the Equipment You agree to reimburse us for and defend us against any claims for such losses or injuries including, without limitation those arising out of the negligence tort strict liability claims or any claim for patent, trademark or copyright infringement This indemnity shall continue even after the term of this lease has expired

12. INSURANCE: During the term of this Lease you will keep the Equipment insured against all risks of loss or damage in an amount not less than the replacement cost of the Equipment without deductible and without co-insurance At our request, you will also obtain and maintain for the term of the Lease, comprehensive public liability insurance in amounts acceptable to us We will be the sole lender loss payee named on the property insurance and named as additional insured on the public liability policy You will pay all premiums for such insurance. If you do not provide such insurance, you agree that we have the right, but not the obligation, to secure insurance on the Equipment in such form and amount as we deem reasonable to protect our interests You understand that if we secure insurance on the Equipment the insurance may not name you as an insured and may not fully protect your interests. You agree that, if we secure insurance on the Equipment, you will pay an insurance charge that may be substantially higher than the premium that you would pay if you placed said insurance independently You agree that, in addition to the premium, the insurance charge you are required to pay us will include an interest charge, administrative and processing fees, which will result in profit to us. You will give us certificates or other evidence of insurance when we request same, and such certificates shall provide that we shall be given 30 days advance notice of any cancellation, nonrenewable or other material change in the insurance. You grant us and our agents power-of-attorney in your name to apply for insurance benefits and endorse checks received in payment of insurance claims

13. DEFAULT AND REMEDIES: If you: (A) do not pay any Obligation when due; (B) break any of your promises, representations or covenants under this Lease or under any other agreement with us; (C) become insolvent, assign your assets for the benefit of your creditors; (D) you or any guarantor enters (voluntarily or involuntarily) into a bankruptcy proceeding; (E) default on any obligations to any of your other creditors; (F) have made any representations to us with respect to any information provided in connection with this Lease or any other agreement with us that is not truthful at the time it is made or have omitted any material information with respect to your asset or liabilities, or any other information that would be considered material in the extension of credit; (G) are a corporation and more than 20% of the issued and outstanding voting capital stock is transferred to or acquired by any person or entity that is not an owner as of the date of this Lease; (H) any guarantor dies; or (I) you change your name, state of incorporation, chief executive office and/or place of residence without providing us with 30 days prior written notice of such change, you will be in default. In the event of a default by you, we can require that you return the Equipment to us and pay to us the remaining balance of all of the Rent due under this Lease, discounted to present value at five percent (5%) , together with any other amounts due under this Lease. We can also require that you pay to us our residual interest in the Equipment Interest shall accrue on all Obligations due us from the date of default until paid at the rate of eighteen percent (18%) per annum, but only to the extent permitted by law. We shall also be entitled to recover from you all damages caused by that default, including any of our income tax benefits We can also use any of the remedies available to us under the UCC or any other law, including repossession of the Equipment or other Collateral You agree to reimburse us for all charges, costs, expenses and attorney's fees that we have to pay to enforce this Lease or collect the Obligations under this Lease and in any lawsuit or other legal proceeding which we are required to bring or defend because of your default You also agree that in the event of a dispute related to or arising out of this Lease, the Lessor in such dispute shall be entitled to recover its reasonable attorney's fees and costs If we have to take possession of the Equipment, you agree to pay the cost of repossession, storing, shipping, repairing and selling the Equipment. You agree that we do not have to notify you that we are selling the Equipment. You also agree that we are entitled to abandon the Equipment if we reasonably believe it to be in our best interests.

14. OTHER RIGHTS: Time is of the essence in this Lease You agree that any delay or failure by us to enforce our rights under this lease or any other agreements shall not prevent us from enforcing any rights at a later time. Both parties intend this Lease to be a valid and legal document, and agree that if any part is determined to be unenforceable, all other parts will remain in full force and effect. You also grant us a security interest in the Equipment and any proceeds of, accessions and attachments to the Equipment as a security for your Obligations. You agree that we may obtain information from credit reporting agencies at any time You agree that, at your expense, we may file, with or without your signature, financing statements or other related filings in our name or in the name of any agent designated by us or our assigns in the form and content and from time to time as we deem proper, listing you as Lessee or Debtor. You appoint us or our designee as your attorney-in-fact to execute and file on your behalf, financing statements covering the equipment or any other collateral. Any notice required by this Lease or the UCC shall be deemed to be delivered when a record properly directed to the intended recipient has been (a) deposited with the US Postal Service, (b) transmitted by facsimile, (c) transmitted through the Internet; or (d) has been personally delivered

15. LESSEE REPRESENTATIONS AND WARRANTIES: You hereby represent and warrant that at the time you sign this Lease you are and shall remain a business entity duly organized, validly existing and in good standing under the laws of the state of your organization, duly qualified to conduct business in every jurisdiction where you conduct business and are not subject to any bankruptcy proceeding and that your exact legal name, state of incorporation, location of your chief executive office and/or your place of residence as applicable, have been correctly identified to us You further represent and warrant that at the time you sign this Lease the person executing the Lease or any related document on behalf of you or any related guarantor shall be authorized to take such action and bind you and the guarantor to the Lease, and that the execution delivery and performance of this Lease is duly authorized by your organizational documents and, if necessary. resolutions of your directors and/or shareholders partners, or managers and/or members

16. RETURN OF EQUIPMENT; RENEWAL: If no default exists or has occurred under this Lease, you may, at the end of the original or any renewal term, purchase all (but not less than all) of the Equipment for its then fair market value, plus any applicable taxes unless a different End of Lease Option is granted to you in a separate addendum At least 120 days prior to the end of the original term you must give us written notice via certified mail that you will purchase the Equipment or that you will return the Equipment to us If you do not give us such written notice or if you do not purchase or deliver the Equipment in accordance with the terms and conditions of this Lease, then this Lease shall automatically renew for a 12 month term, and thereafter for successive 6 month terms until you deliver the Equipment to us. During such renewal(s), the Rent shall be the highest monthly rate set forth in this Lease We may cancel the renewal by sending you a written notice 20 days prior to the effective date of the cancellation. If the Fair Market Value Purchase Option is available to you, we will use our reasonable judgment to determine the Equipment's fair market value. Any End of Lease Option may become null and void at our discretion if any event of default occurs or continues at any time during the original term of the Lease. Upon payment of End of Lease Option price and if no default exists, we shall transfer our interest in the Equipment to you "AS IS, WHERE IS" without any representation or warranty whatsoever and this Lease will terminate Provided you have given the required notice and are not then in default you shall return the Equipment freight and insurance prepaid, to us in good repair, condition and working order, ordinary wear and tear expected, in a manner and to a location designated by us Until the End of Lease Option price is actually paid, you will be responsible to continue to pay rent at the highest monthly rate set forth in this lease.

17. LATE CHARGE; FEES: If any part of any payment obligation is not made by you within (3) days of the due date, you agree to pay us up to fifteen percent (15%) of each such late payment (to the extent permitted by law). You agree to pay us the late charge not later than one month following the date that the obligation was first due You agree to reimburse us for our reasonable expenses incurred in connection with this Lease, including but not limited to, a documentation fee based on our current fee schedule which is available upon your request.

18. ENTIRE AGREEMENT; CHANGES: This Lease contains the entire agreement between you and us, and it may not be altered, modified, terminated or otherwise changed except in writing by both of us A limiting endorsement on a check or other form of payment will not be effective to modify the Obligations or any of the other terms and conditions of this Lease. and we may apply any payment received without being bound by such limiting endorsements

19. COMPLIANCE; NOTICES: In the event you fail to comply with any terms of this Lease, we can but we do not have to, take any action necessary to effect your compliance upon ten (10) days prior written notice to you If we are required to pay any amount to obtain your compliance, the amount we pay plus all of our expense in causing your compliance, shall become additional obligations and shall be paid by you together with the next due rent payment If any notices are required under this Lease, they shall be sufficient if given personally or mailed to the address set forth in this Lease by certified or registered mail, postage prepaid This Lease is for the benefit of and is binding upon you and your personal representatives, successors and assigns

20. CHOICE OF LAW; JURISDICTION: YOU AND WE AGREE THAT THIS LEASE SHALL BE BINDING WHEN ACCEPTED IN WRITING BY US AT OUR OFFICE AND GOVERNED BY THE LAWS OF THE STATE OF CALIFORNIA OR SHOULD WE ASSIGN THIS LEASE, THAT THIS LEASE SHALL BE INTERPRETED, AT OPTION OF THE ASSIGNEE, IN ACCORDANCE WITH THE LAWS AND REGULATIONS OF THE STATE OF ASSIGNEE'S PRINCIPAL PLACE OF BUSINESS. YOU AND WE EACH CONSENT TO THE JURISDICTION OF THE COURTS IN THE STATE AND COUNTY WHERE WE OR OUR ASSIGNEE MAY HAVE OUR THEIR PRINCIPAL PLACE OF BUSINESS. YOU UNDERSTAND THAT YOUR SUBMISSION TO JURISDICTION DIRECTLY BENEFITS US AND IS AN INDUCEMENT TO OUR ENTERING INTO THE LEASE. YOU ACKNOWLEDGE YOUR PAYMENTS TO US OR TO OUR ASSIGNEE AS A DELIBERATE ENGAGEMENT OF SIGNIFICANT BUSINESS ACTIVITY WITHIN THE STATE AND COUNTY OF THE PAYEE SUCH THAT YOU WOULD ANTICIPATE BEING SUMMONED INTO COURT WITHIN SUCH STATE AND COUNTY, SHOULD YOU BREACH ANY TERM OR CONDITION OF THIS LEASE. UPON REQUEST OF OUR ASSIGNEE YOU AGREE TO EXECUTE A WRITTEN ACKNOWLEDGMENT OF THE APPLICATION OF THE LAW OF THE STATE IN WHICH OUR ASSIGNEE'S PRINCIPAL PLACE OF BUSINESS IS LOCATED AND THE JURISDICTION OF THE COURTS OF SUCH STATE OVER DISPUTES ARISING UNDER THIS LEASE. HOWEVER, YOU AGREE THAT WE WILL HAVE THE RIGHT TO COMMENCE ANY ACTION IN ANY COURT HAVING THE PROPER JURISDICTION FOR THAT ACTION. YOU AGREE AND CONSENT THAT WE MAY SERVE LEGAL PAPERS ON YOU BY REGISTERED OR CERTIFIED MAIL, WHICH SHALL BE SUFFICIENT TO OBTAIN JURISDICTION. WE EACH WAIVE TRIAL BY JURY IN ANY ACTION BETWEEN US.

21. REPRESENTATIONS AND COVENANT OF LESSEE: You represent that all financial and other information furnished to us was, at the time of delivery, true and correct During the term of this Lease you shall provide us with such interim or annual financial statements and filed tax returns or any other document that we deem necessary under normal course of business.

22. If this document was sent electronically, you hereby warrant that this document has not been altered in any way. Any alteration or revision to any part of this or any attached documents will make all such alterations or revisions non-binding and void. A facsimile of this agreement or related documents with signature may be considered to be original.

Lease No. 06-2793

INITIAL HERE: X KB

# Exhibit 'A'

Equipment Description

Lease Agreement #: 06-2793

The following invoice(s) are referenced, and hereby incorporated, solely for the purpose of describing the equipment subject to lease agreement number referenced above. Capitalized terms not defined herein shall have the meaning given them in the Lease. By Signing below, lessee acknowledges that it is leasing the Equipment listed on the invoices(s) with all attachments, accessories and inclusions per invoice pursuant to the terms and conditions set out in the Lease.

| Equipment | Invoice # | Date | Vendor |
|---|---|---|---|
| Medical Rental Equipment | 81863-81885 | 11/02/06 | Dalton Medical Corporation<br>1103 Venture Ct.<br>Carrollton, TX 75006 |

All equipment, general intangibles and all modifications and attachments thereto and replacements therefore now and hereafter covered by the Equipment Lease Agreement dated as of 11/02/06between Alliance Funding Group as Lessor and Med-Depot, Inc. as Lessee and all additional commitments related thereto.

Lessee: Med-Depot, Inc.

By: X [signature]

Kenny Baker, ., President

Date: 11/02/06

exhibit a

LESSOR: Alliance Funding Group, Inc.
2099 S. State College Blvd Suite 100
Anaheim, CA 92806

LEASE NUMBER 06-2793

DATE OF LEASE 11/2/06

LESSEE: Med-Depot, Inc.
5529 D N.W. 5th,
Oklahoma City, OK 73127

# ACKNOWLEDGEMENT AND ACCEPTANCE OF EQUIPMENT BY LESSEE

**"See Exhibit A or Lease Agreement attached hereto and made a part hereof"**

**You hereby acknowledge that the Equipment described above has been received in good condition and repair, has been properly installed, tested, and inspected, and is operating satisfactorily in all respects for all of your intended uses and purposes. You hereby accept unconditionally and irrevocably the Equipment.**

**By signature below, You specifically authorize and request us to make payment to the supplier of the Equipment. You agree that said Equipment has not been delivered, installed, or accepted on a trial basis.**

**WITH THE DELIVERY OF THIS DOCUMENT TO US, YOU ACKNOWLEDGE AND AGREE THAT YOUR OBLIGATIONS TO US BECOME ABSOLUTE AND IRREVOCABLE AND YOU SHALL BE FOREVER ESTOPPED FROM DENYING THE TRUTHFULNESS OF THE REPRESENTATIONS MADE IN THIS DOCUMENT.**

**A FASCIMILE OF THIS AGREEMENT WITH SIGNATURE SHALL BE CONSIDERED TO BE AN ORIGINAL.**

Date of Acceptance

11/08/06

LESSEE: Med-Depot, Inc.

X [signature]
Kenny Baker, President

I HEREBY AUTHORIZE ____________ Title ____________

TO ORALLY VERIFY MY/OUR ACCEPTANCE OF THE ABOVE REFERENCED EQUIPMENT IN MY ABSENCE.

**IMPORTANT: THIS DOCUMENT HAS LEGAL AND FINANCIAL CONSEQUENCES TO YOU. DO NOT SIGN THIS DOCUMENT UNTIL YOU HAVE ACTUALLY RECEIVED ALL OF THE EQUIPMENT AND ARE COMPLETELY SATISFIED WITH IT.**

da

# EXHIBIT B

# ADDENDUM TO LEASE

Lease No.: 06-2794

By execution hereof, the Lessee, Med-Depot, Inc. consents to this Addendum to the above described lease and to making it a part thereof. Further, by execution hereof, the Lessee consents to the modification and changing of all documents as presently contained in the Lease

**A FACSIMILE OF THIS AGREEMENT WITH SIGNATURE SHALL BE CONSIDERED TO BE AN ORIGINAL.**

**CHANGES ARE DESCRIBED AS FOLLOWS:**

Monthly payment amount shall be amended to read: $2,182.96. Previous Payment amount was: $1,738.72.

All other terms and conditions of the Lease Agreement and Guarantee(s) remain in full force and effect.

LESSOR: Alliance Funding Group, Inc.
BY: [signature]
ITS: Funding Manager
DATE: 11/08/06

LESSEE: Med-Depot, Inc.
BY: [signature]
Kenny Baker
ITS: President & Individually
DATE: 11/2/06

FPCA 12/01

AFG
Alliance Funding Group
2099 S. State College Blvd, Ste 100
Anaheim, CA 92806

Phone (800) 978 8817
Fax (714) 704.1448
Url www.alliancefunds.com

LEASE AGREEMENT
Lease Number.
06-2794

| Full Legal Name and Address of Lessee | | Name and address of Equipment Supplier |
|---|---|---|
| Med-Depot, Inc.<br>5529 D N.W. 5th<br>Oklahoma City, OK 73127 | | |
| **Lessee Phone Number**<br>800-299-9277 | **Lessee Tax ID**<br>73-1541710 | **Equipment Supplier Phone Number** |

| Quantity | Equipment Description |
|---|---|
| | See attached Exhibit 'A' |

| Monthly Rent (Plus applicable taxes if any) | Base Term in Months | Deposit Applied To | Security Deposit (if any) |
|---|---|---|---|
| $1.738 72 | 36 | First and Last Payment | $0 00 |

| Equipment Location (if other than billing address) | City | State | Zip |
|---|---|---|---|
| | | | |

Please read this Lease Agreement and any schedules attached (Lease) carefully since it represents the entire agreement We have written the Lease in plain language because we want you to fully understand its terms For purposes of this Lease, you and your shall mean the Lessee indicated above, and we, us and our refer to Lessor Alliance Funding Group, its agents and employees successors and assigns

END OF LEASE OPTIONS: You will have the following options at the end of the original term, provided the lease has not terminated early and no event of default under the lease has occurred and is continuing. 1. Purchase the equipment for fair market value 2. Renew the lease per Paragraph 16 3. Return the equipment as provided in Paragraph 16 of this lease

The undersigned agrees that this lease reflects the agreement of the parties, including all terms of the reverse side of this document.

AGREED: Med-Depot, Inc.

By: X [signature] Date: 11/02/06
Kenny Baker, President

AGREED: Alliance Funding Group

By: X [signature] Date: 11/08/06
Funding Manager

Company Resolution: The undersigned certifies that he/she the duly elected and qualified Secretary of Med-Depot, Inc. (the "Company"), hereby certify that Company's exact legal name state of incorporation/organization, location of its chief executive officer and/or its place of residence as applicable, have been correctly identified to Lessor, and that at a duly constituted meeting of the Board of Directors/Members/Partners of the Company, the Board resolved that Kenny Baker, in his/her capacity as President, is authorized for, on behalf of the company, to negotiate, procure and execute such Lease Agreements and any other documents in connection with same, which is his / her opinion are necessary or advisable to effectuate the most favorable interests of the Company, and the execution of such documents by said officer shall be conclusive evidence of his/her approval thereof.

IN WITNESS WHEREOF I have affixed my name as Secretary of the Company on 11/02/06

Legal Name Date: 11/02/06
Med-Depot, Inc.

Signature
X [signature] Title: Corporate Secretary
CORPORATE SECRETARY SIGNATURE

LEASE GUARANTY: For the purposes of this Guaranty I/ME/MY shall mean the person making the guaranty and if married, his or her marital community YOU/YOUR shall mean the Lessor. I agree that I have an interest in the Lessee, economic or otherwise, and that you would not enter into this Lease without this guaranty. I unconditionally guaranty that the Lessee will fully and promptly pay all its Obligations under the Lease and any future leases with you when they are due and will perform all its other obligations under the Lease even if you modify or renew the Lease, or if any payments made by the Lessee are rescinded or returned upon the insolvency, bankruptcy or reorganization of the lessee, as if the payment had not been made You do not have to notify me if the Lessee is in default under the Lease You may obtain any information from credit reporting agencies you deem necessary to enforce this guaranty. If the Lessee defaults, I will immediately pay in accordance with the default provisions of the Lease all obligations due under the Lease I agree that I will not be released or discharged if you: (i) fail to perfect a security interest in the Equipment or any other property which secures the Obligations of Lessee or me to you (Collateral); (ii) fail to protect the Collateral; or (iii) abandon or release the Collateral I agree that you do not have to proceed first against the Lessee or any Collateral. I hereby waive notice of acceptance of this guaranty and of all other notices or demands of any kind in which I may be entitled to except for demand for payment I will reimburse all expenses you incur in enforcing your rights against Lessee or me, including, without limitation attorney's fees and costs. I acknowledge that I have read and understood the Lease and this Guaranty. This is an irrevocable, continuing guaranty and binds my heirs, administrators and representatives. I CONSENT TO THE JURISDICTION OF THE COURTS HAVING JURISDICTION OVER DISPUTES ARISING UNDER THE LEASE FOR THE DETERMINATION OF ALL DISPUTES UNDER THE LEASE AND THIS GUARANTY. I agree and consent that you may serve legal papers on you by registered or certified mail, which shall be sufficient to obtain jurisdiction. THE PARTIES EACH WAIVE TRIAL BY JURY IN ANY ACTION RELATING TO THE LEASE OR THIS GUARANTY THIS GUARANTY WILL BE JOINTLY AND SEVERALLY RESPONSIBLE.

Signature
X [signature] X ____________________
Kenny Baker,

Date: 11/02/06

1. LEASE: You agree to lease from us and we agree to lease to you, the equipment listed above or on any schedule to this Lease (Equipment) You unconditionally promise to pay us the sum of all of the rental and other payments indicated above or on any schedule (Rent) You authorize us to insert in this lease any serial numbers and other identification data about the Equipment, as well as any other omitted factual matters or correct obvious errors All Rent and other payments under this Lease or any other agreement with us (collectively Obligation (s) are payable in U.S dollars, and may be adjusted upward or downward no more than ten percent (10%) to reflect actual costs.

2. TERM OF LEASE: This Lease shall become effective upon acceptance by us by signing and dating this Lease A Prorated portion of the aggregated average of the Rent based on a daily charge of one-thirtieth (1/30) of the Rent from the date of the Equipment has been delivered to you ("Commencement Date") to the end of the month shall be payable at the Commencement Date. The Base Term of this Lease shall begin on the first day of the month following the Commencement Date and terminate upon the expiration of the number of months stated under Base Term, above. Following the Commencement Date, Rent and other Obligation payments are due on the first of each month, payable to a location to be designated in writing. YOUR OBLIGATION TO PAY RENT TO US IS UNCONDITIONAL AND NOT SUBJECT TO ANY REDUCTION, SET-OFF, DEFENSE OR COUNTERCLAIM AND MAY NOT BE CANCELED FOR ANY REASON WHATSOEVER. In the event this lease is not fully completed for any reason beyond our control, all deposits made by you will be retained by us as compensation for documentation, processing and other expenses. We have the right, but not the obligation, to electronically withdraw funds from your bank account to pay for any unpaid Rents, taxes, fees, charges and assessments. You will provide us with any bank account information we request in order to process electronic payments. You may revoke our authorization to electronically withdraw funds by giving us ten (10) days prior written notice

3. SECURITY DEPOSIT. As security for the payment of Rent, and performance of all the Obligations, you deposit with us the amount set forth in the section shown as "Security Deposit". In the event you shall default in the performance of any of the Obligations, we shall have the right, but shall not be obligated to apply the security deposit to the curing of such default On the expiration or earlier termination of this Lease, or any extension or renewal hereof, provided you have fully performed all of the provisions of this Lease, we will return to you any then remaining balance of the security deposit. We shall not be required to keep the security deposit separate from our general funds and you shall not be entitled to any interest on the security deposit

4. NO WARRANTIES; NO AGENCY: WE ARE LEASING THE EQUIPMENT TO YOU AS IS. WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF NON-INFRINGMENT, MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE OR ORDINARY USE IN CONNECTION WITH THIS LEASE. You understand and agree that we are independent from the vendor, manufacturer and/or supplier (Supplier) of the Equipment and that neither the Supplier nor any other person is our agent, nor are they authorized to waive or change any term or condition of this Lease. You agree that no representation, guaranty or warranty by the Supplier or other person is binding on us So long as you are not in default under any of the terms of this Lease we transfer to you any warranties made to us as the owner of the Equipment by the Supplier. You agree that any breach by the Supplier will not relieve or excuse your obligations to us. Regardless of cause, you will not assert any claims whatsoever against us for loss of profits you expected to make or any other direct, consequential, special or indirect damages. If you have entered into a maintenance agreement for the Equipment and the cost of the maintenance is included in the Rent, you acknowledged that we are not responsible for any service, repairs, or maintenance of the Equipment, and that we are not a party to the maintenance agreement. If you have a dispute regarding maintenance or service, then you will nevertheless continue to pay all Obligations as they become due.

5. UCC-ARTICLE-2A: You agree that this Lease is a "Finance Lease" under Article 2A of the Uniform Commercial Code as adopted by the State of California (UCC) You acknowledge that: (a) we did not select, manufacture or supply the Equipment but at your request we have purchased the Equipment that you are leasing from us You agree that you have approved any purchase or supply contract between us and the Supplier before signing this Lease; or, if you have entered in to a purchase contract for the Equipment, you agree to assign it to us effective when we pay for the Equipment You may have rights under the supply or purchase contract, and you may contact the Supplier for a description of those rights or any warranties. To the extent permitted by applicable law, YOU WAIVE ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON YOU UNDER UCC 2A-303 AND 2A-508 THROUGH 2A-522, INCLUDING WITHOUT LIMITATION, THE RIGHT TO: (i) REPUDIATE THE LEASE AND REJECT THE EQUIPMENT; (ii) REVOKE ACCEPTANCE OF THE LEASE; OR (iii) RECOVER DAMAGES FROM US FOR ANY BREACH OF WARRANTY.

6. DELIVERY OF EQUIPMENT: You agree to accept the E[illegible]ent when it is delivered and to sign the Equipment Acceptance supplie[illegible] We may at our discretion confirm by telephone that you have accepted the Equipment and this telephone verification of your acceptance of the Equipment shall have the same effect as a signed Equipment Acceptance.

7. ASSIGNMENT: YOU MAY NOT SELL, TRANSFER, ASSIGN OR SUBLEASE THE EQUIPMENT WITHOUT OUR PRIOR WRITTEN APPROVAL. We may sell, assign or transfer this Lease, or any part of it, and/or ownership of the Equipment without notifying you; and you agree that if we do, the new Lessor will have the same rights and benefits that we now have, and will not have to perform any of our obligations. You agree that the rights of the new Lessor will not be subject to any claims, defenses or setoffs that you may have against us. However any such assignment, sale, or transfer of this Lease or the Equipment will not relieve us of our obligations to you under this Lease.

8. OWNERSHIP, RIGHTS, AND QUIET ENJOYMENT: You agree that we are the owner of and have title to the Equipment. You agree, at your expense, to protect and defend our title and other rights to the Equipment. Further, you agree that you will at all times keep the Equipment free from all legal process or lien if asserted or made against you or the Equipment. You shall have the right to quiet use and enjoyment of the Equipment for the Term of this Lease, provided you are not in default. We also have the right at reasonable times to inspect the Equipment at your expense.

9. CARE, USE AND LOCATION; LOSS OF EQUIPMENT: You are responsible for installing and keeping the Equipment in good working order and repair. You will keep and use the Equipment only at your address shown on this Lease, only for business or commercial purposes and in compliance with all applicable laws, ordinances or regulations. You will not make any alterations to the Equipment without our prior written consent, nor will you permanently attach the equipment to any real estate. You are responsible for protecting the Equipment from damage, and from any other kind of loss while you have the Equipment or while it is being delivered to you. In the event the equipment was lost, stolen or damaged, so long as you are not in default under this Lease, then you shall have the option within one week of such event to: (a) repair or replace the Equipment or (b) pay to us the unpaid balance of the remaining Rent under this Lease and our residual interest in the Equipment, discounted to present value at the rate of five percent (5%) plus any other Obligations.

10. TAXES AND FEES: You agree to pay when due all taxes, fees, fines, assessments and penalties relating to this Lease, including, without limitation, documentation fees, filing fees, credit fees, equipment inspection fees, early termination or assumption fees, title fees, name change fees, sales or property taxes, use taxes and business taxes. You also agree that we may estimate the yearly personal property taxes that will be due for the Equipment, and you agree to pay us the estimated taxes together with a processing fee as invoiced by us. If we pay any taxes, fines or penalties for you, you agree to reimburse us together with a processing fee, on demand.

11. INDEMNITY: We are not responsible for any injuries or losses to you or any other person or property caused by the installation, operation, maintenance or use of the Equipment. You agree to reimburse us for and defend us against any claims for such losses or injuries, including, without limitation those arising out of the negligence, tort, strict liability claims or any claim for patent, trademark or copyright infringement. This indemnity shall continue even after the term of this lease has expired.

12. INSURANCE: During the term of this Lease, you will keep the Equipment insured against all risks of loss or damage in an amount not less than the replacement cost of the Equipment without deductible and without co-insurance. At our request, you will also obtain and maintain for the term of the Lease, comprehensive public liability insurance in amounts acceptable to us. We will be the sole lender loss payee named on the property insurance and named as additional insured on the public liability policy. You will pay all premiums for such insurance. If you do not provide such insurance you agree that we have the right, but not the obligation to secure insurance on the Equipment in such form and amount as we deem reasonable to protect our interests. You understand that if we secure insurance on the Equipment the insurance may not name you as an insured and may not fully protect your interests. You agree that, if we secure insurance on the Equipment, you will pay an insurance charge that may be substantially higher than the premium that you would pay if you placed said insurance independently. You agree that, in addition to the premium, the insurance charge you are required to pay us will include an interest charge, administrative and processing fees, which will result in profit to us. You will give us certificates or other evidence of insurance when we request same, and such certificates shall provide that we shall be given 30 days advance notice of any cancellation, nonrenewable or other material change in the insurance. You grant us and our agents power-of-attorney in your name to apply for insurance benefits and endorse checks received in payment of insurance claims.

13. DEFAULT AND REMEDIES: If you: (A) do not pay any Obligation when due; (B) break any of your promises, representations or covenants under this Lease or under any other agreement with us; (C) become insolvent, assign your assets for the benefit of your creditors; (D) you or any guarantor enters (voluntarily or involuntarily) into a bankruptcy proceeding; (E) default on any obligations to any of your other creditors; (F) have made any representations to us with respect to any information provided in connection with this Lease or any other agreement with us that is not truthful at the time it is made or have omitted any material information with respect to your asset or liabilities, or any other information that would be considered material in the extension of credit; (G) are a corporation and more than 20% of the issued and outstanding voting capital stock is transferred to or acquired by any person or entity that is not an owner as of the date of this Lease; (H) any guarantor dies; or (I) you change your name, state of incorporation, chief executive office and/or place of residence without providing us with 30 days prior written notice of such change, you will be in default. In the event of a default by you, we can require that you return the Equipment to us and pay to us the remaining balance of all of the Rent due under this Lease, discounted to present value at five percent (5%), together with any other amounts due under this Lease. We can also require that you pay to us our residual interest in the Equipment. Interest shall accrue on all Obligations due us from the date of default until paid at the rate of eighteen percent (18%) per annum, but only to the extent permitted by law. We shall also be entitled to recover from you all damages caused by that default including any of our income tax benefits. We can also use any of the remedies available to us under the UCC or any other law, including repossession of the Equipment or other Collateral. You agree to reimburse us for all charges, costs, expenses and attorney's fees that we have to pay to enforce this Lease or collect the Obligations under this Lease and in any lawsuit or other legal proceeding which we are required to bring or defend because of your default. You also agree that in the event of a dispute related to or arising out of this Lease, the Lessor in such dispute shall be entitled to recover its reasonable attorney's fees and costs. If we have to take possession of the Equipment, you agree to pay the cost of repossession, storing, shipping, repairing and selling the Equipment. You agree that we do not have to notify you that we are selling the Equipment. You also agree that we are entitled to abandon the Equipment if we reasonably believe it to be in our best interests.

14. OTHER RIGHTS: Time is of the essence in this Lease. You agree that any delay or failure by us to enforce our rights under this lease or any other agreements shall not prevent us from enforcing any rights at a later time. Both parties intend this Lease to be a valid and legal document, and agree that if any part is determined to be unenforceable, all other parts will remain in full force and effect. You also grant us a security interest in the Equipment and any proceeds of accessions and attachments to the Equipment as a security for your Obligations. You agree that we may obtain information from credit reporting agencies at any time. You agree that, at your expense, we may file, with or without your signature, financing statements or other related filings in our name or in the name of any agent designated by us or our assigns in the form and content and from time to time as we deem proper, listing you as Lessee or Debtor. You appoint us or our designee as your attorney-in-fact to execute and file on your behalf, financing statements covering the equipment or any other collateral. Any notice required by this Lease or the UCC shall be deemed to be delivered when a record properly directed to the intended recipient has been (a) deposited with the US Postal Service (b) transmitted by facsimile, (c) transmitted through the internet; or (d) has been personally delivered.

15. LESSEE REPRESENTATIONS AND WARRANTIES: You hereby represent and warrant that at the time you sign this Lease you are and shall remain a business entity duly organized, validly existing and in good standing under the laws of the state of your organization, duly qualified to conduct business in every jurisdiction where you conduct business and are not subject to any bankruptcy proceeding and that your exact legal name, state of incorporation, location of your chief executive office and/or your place of residence as applicable, have been correctly identified to us. You further represent and warrant that at the time you sign this Lease the person executing the Lease or any related document on behalf of you or any related guarantor shall be authorized to take such action and bind you and the guarantor to the Lease, and that the execution delivery and performance of this Lease is duly authorized by your organizational documents and if necessary resolutions of your directors and/or shareholders partners or managers and/or members.

16. RETURN OF EQUIPMENT; RENEWAL: If no default exists or has occurred under this Lease, you may, at the end of the original or any renewal term, purchase all (but not less than all) of the Equipment for its then fair market value, plus any applicable taxes unless a different End of Lease Option is granted to you in a separate addendum. At least 120 days prior to the end of the original term you must give us written notice via certified mail that you will purchase the Equipment or that you will return the Equipment to us. If you do not give us such written notice or if you do not purchase or deliver the Equipment in accordance with the terms and conditions of this Lease, then this Lease shall automatically renew for a 12 month term, and thereafter for successive 6 month terms until you deliver the Equipment to us. During such renewal(s), the Rent shall be the highest monthly rate set forth in this Lease. We may cancel the renewal by sending you a written notice 20 days prior to the effective date of the cancellation. If the Fair Market Value Purchase Option is available to you we will use our reasonable judgment to determine the Equipment's fair market value. Any End of Lease Option may become null and void at our discretion if any event of default occurs or continues at any time during the original term of the Lease. Upon payment of End of Lease Option price and if no default exists we shall transfer our interest in the Equipment to you "AS IS, WHERE IS" without any representation or warranty whatsoever and this Lease will terminate. Provided you have given the required notice, and are not then in default, you shall return the Equipment, freight and insurance prepaid to us in good repair, condition and working order, ordinary wear and tear excepted, in a manner and to a location designated by us. Until the End of Lease Option price is actually paid, you will be responsible to continue to pay rent at the highest monthly rate set forth in this lease.

17. LATE CHARGE; FEES: If any part of any payment obligation is not made by you within (3) days of the due date, you agree to pay us up to fifteen percent (15%) of each such late payment (to the extent permitted by law). You agree to pay us the late charge not later than one month following the date that the obligation was first due. You agree to reimburse us for our reasonable expenses incurred in connection with this Lease, including but not limited to, a documentation fee based on our current fee schedule which is available upon your request.

18. ENTIRE AGREEMENT; CHANGES: This Lease contains the entire agreement between you and us, and it may not be altered, modified, terminated or otherwise changed except in writing by both of us. A limiting endorsement on a check or other form of payment will not be effective to modify the Obligations or any of the other terms and conditions of this Lease, and we may apply any payment received without being bound by such limiting endorsements.

19. COMPLIANCE; NOTICES: In the event you fail to comply with any terms of this Lease, we can, but we do not have to, take any action necessary to effect your compliance upon ten (10) days prior written notice to you. If we are required to pay any amount to obtain your compliance, the amount we pay plus all of our expense in causing your compliance, shall become additional obligations and shall be paid by you together with the next due rent payment. If any notices are required under this Lease, they shall be sufficient if given personally or mailed to the address set forth in this Lease by certified or registered mail postage prepaid. This Lease is for the benefit of and is binding upon you and your personal representatives, successors and assigns.

20. CHOICE OF LAW; JURISDICTION: YOU AND WE AGREE THAT THIS LEASE SHALL BE BINDING WHEN ACCEPTED IN WRITING BY US AT OUR OFFICE AND GOVERNED BY THE LAWS OF THE STATE OF CALIFORNIA OR SHOULD WE ASSIGN THIS LEASE, THAT THIS LEASE SHALL BE INTERPRETED, AT OPTION OF THE ASSIGNEE, IN ACCORDANCE WITH THE LAWS AND REGULATIONS OF THE STATE OF ASSIGNEE'S PRINCIPAL PLACE OF BUSINESS. YOU AND WE EACH CONSENT TO THE JURISDICTION OF THE COURTS IN THE STATE AND COUNTY WHERE WE OR OUR ASSIGNEE MAY HAVE OUR THEIR PRINCIPAL PLACE OF BUSINESS. YOU UNDERSTAND THAT YOUR SUBMISSION TO JURISDICTION DIRECTLY BENEFITS US AND IS AN INDUCEMENT TO OUR ENTERING INTO THE LEASE. YOU ACKNOWLEDGE YOUR PAYMENTS TO US OR TO OUR ASSIGNEE AS A DELIBERATE ENGAGEMENT OF SIGNIFICANT BUSINESS ACTIVITY WITHIN THE STATE AND COUNTY OF THE PAYEE SUCH THAT YOU WOULD ANTICIPATE BEING SUMMONED INTO COURT WITHIN SUCH STATE AND COUNTY, SHOULD YOU BREACH ANY TERM OR CONDITION OF THIS LEASE. UPON REQUEST OF OUR ASSIGNEE YOU AGREE TO EXECUTE A WRITTEN ACKNOWLEDGMENT OF THE APPLICATION OF THE LAW OF THE STATE IN WHICH OUR ASSIGNEE'S PRINCIPAL PLACE OF BUSINESS IS LOCATED AND THE JURISDICTION OF THE COURTS OF SUCH STATE OVER DISPUTES ARISING UNDER THIS LEASE. HOWEVER, YOU AGREE THAT WE WILL HAVE THE RIGHT TO COMMENCE ANY ACTION IN ANY COURT HAVING THE PROPER JURISDICTION FOR THAT ACTION. YOU AGREE AND CONSENT THAT WE MAY SERVE LEGAL PAPERS ON YOU BY REGISTERED OR CERTIFIED MAIL, WHICH SHALL BE SUFFICIENT TO OBTAIN JURISDICTION. WE EACH WAIVE TRIAL BY JURY IN ANY ACTION BETWEEN US.

21. REPRESENTATIONS AND COVENANT OF LESSEE: You represent that all financial and other information furnished to us was, at the time of delivery, true and correct. During the term of this Lease, you shall provide us with such interim or annual financial statements and filed tax returns or any other document that we deem necessary under normal course of business.

22. If this document was sent electronically, you hereby warrant that this document has not been altered in any way. Any alteration or revision to any part of this or any attached documents will make all such alterations or revisions non-binding and void. A facsimile of this agreement or related documents with signature may be considered to be original.

Lease No. 06-2794

INITIAL HERE: X [initials]

# Exhibit 'A'

Equipment Description

Lease Agreement #: 06-2794

The following invoice(s) are referenced, and hereby incorporated, solely for the purpose of describing the equipment subject to lease agreement number referenced above. Capitalized terms not defined herein shall have the meaning given them in the Lease. By Signing below, lessee acknowledges that it is leasing the Equipment listed on the invoices(s) with all attachments, accessories and inclusions per invoice pursuant to the terms and conditions set out in the Lease.

| Equipment | Invoice # | Date | Vendor |
|---|---|---|---|
| Medical Rental Equipment | 17083 | 11/8/06 | Invacare<br>33416 Treasury Center Drive<br>Chicago, IL 60694 |
| Medical Rental Equipment | 0069484<br>0069483<br>0069485<br>0069486 | 11/07/06<br>11/07/06<br>11/07/06<br>11/07/06 | SpanAmerica<br>70 Commerce Center<br>Greenville, SC 29615 |
| Medical Rental Equipment | 0602119-IN | 11/07/06 | Drive Medical Design & Manufacturing<br>99 Seaview Blvd.<br>Port Washington, NY 11050 |

All equipment, general intangibles and all modifications and attachments thereto and replacements therefore now and hereafter covered by the Equipment Lease Agreement dated as of 11/02/06between Alliance Funding Group as Lessor and Med-Depot, Inc. as Lessee and all additional commitments related thereto.

Lessee: Med-Depot, Inc.

By: X ______________________

Kenny Baker, ., President

Date: 11/02/06

exhibit a

Page 1 of 1

LESSOR: Alliance Funding Group, Inc.
2099 S. State College Blvd Suite 100
Anaheim, CA 92806

LEASE NUMBER 06-2794

DATE OF LEASE 11/2/06

LESSEE: Med-Depot, Inc.
5529 D N.W. 5th,
Oklahoma City, OK 73127

# ACKNOWLEDGEMENT AND ACCEPTANCE OF EQUIPMENT BY LESSEE

**"See Exhibit A or Lease Agreement attached hereto and made a part hereof"**

You hereby acknowledge that the Equipment described above has been received in good condition and repair, has been properly installed, tested, and inspected, and is operating satisfactorily in all respects for all of your intended uses and purposes. You hereby accept unconditionally and irrevocably the Equipment.

By signature below, You specifically authorize and request us to make payment to the supplier of the Equipment. You agree that said Equipment has not been delivered, installed, or accepted on a trial basis.

WITH THE DELIVERY OF THIS DOCUMENT TO US, YOU ACKNOWLEDGE AND AGREE THAT YOUR OBLIGATIONS TO US BECOME ABSOLUTE AND IRREVOCABLE AND YOU SHALL BE FOREVER ESTOPPED FROM DENYING THE TRUTHFULNESS OF THE REPRESENTATIONS MADE IN THIS DOCUMENT.

A FASCIMILE OF THIS AGREEMENT WITH SIGNATURE SHALL BE CONSIDERED TO BE AN ORIGINAL

LESSEE: Med-Depot, Inc.

**Date of Acceptance**

11-1-06

x [signature]
Kenny Baker, President

I HEREBY AUTHORIZE ____________, ____________
Title

TO ORALLY VERIFY MY/OUR ACCEPTANCE OF THE ABOVE REFERENCED EQUIPMENT IN MY ABSENCE.

**IMPORTANT:** THIS DOCUMENT HAS LEGAL AND FINANCIAL CONSEQUENCES TO YOU. DO NOT SIGN THIS DOCUMENT UNTIL YOU HAVE ACTUALLY RECEIVED ALL OF THE EQUIPMENT AND ARE COMPLETELY SATISFIED WITH IT.

# EXHIBIT C

06-2698

| AFG Alliance Funding Group 3745 W. Chapman Ave. 2nd Floor Orange, CA 92868 | Phone (800) 878-[illegible] Fax (714) 704-[illegible] Url www.alliancefunds.com | LEASE AGREEMENT Lease Number: |
|---|---|---|
| Full Legal Name and Address of Lessee: Med-Depot, Inc. 2351 W. Northwest Highway, Suite 2135 Dallas, TX 75220 | | Name and address of Equipment Supplier: See attached Exhibit A |
| Lessee Phone Number: [illegible]-0277 | Lessee Tax ID: 73-1541710 | Equipment Supplier Phone Number: |

| Quantity | Equipment Description |
|---|---|
| | See attached Exhibit A |

| Monthly Rent (Plus applicable taxes, if any) | Base Term in Months | Deposit Applies To | Security Deposit (if any) |
|---|---|---|---|
| $4,[illegible] | 24 | First Payment Only | $0.00 |

| Equipment Location (if other than billing address) | City | State | Zip |
|---|---|---|---|
| | | | |

Please read this Lease Agreement and any schedules attached [illegible] carefully since it represents the entire agreement. We have written the Lease in plain language because we want you to fully understand its terms. For purposes of this Lease, you and your shall mean the Lessee indicated above, and we, us and our refer to Lessor, Alliance Funding Group, its agents and employees, successors and assigns.

END OF LEASE OPTIONS: You will have the following options at the end of the original term, provided the lease has not terminated early and no event of default under the lease has occurred and is continuing. 1. Purchase the equipment for fair market value. 2. Renew the lease per Paragraph 16. 3. Return the equipment as provided in Paragraph 16 of this lease.

The undersigned agrees that this lease reflects the agreement of the parties, including all terms of the reverse side of this document.

AGREED: Med-Depot, Inc.

By: X [signature] Date: 07/29/08

Name/Title: [illegible]

AGREED: Alliance Funding Group

By: X [signature] Date: 7-31-08

Funding Manager

Company Resolution: The undersigned certifies that he/she is the duly elected and qualified Secretary of Med-Depot, Inc. (the "Company"), hereby certify that Company's exact legal name, state of incorporation/organization, location of its chief executive office and/or its place of residence, as applicable, have been correctly identified to Lessor, and that at a duly constituted meeting of the Board of Directors/Members/Partners of the Company, the Board resolved that Alex Pendleton, in his/her capacity as CEO, is authorized for, on behalf of the company, to negotiate, procure and execute such Lease Agreements and any other documents in connection with same, which in his/her opinion are necessary or advisable to effectuate the most favorable interests of the Company, and the execution of such documents by said officer shall be conclusive evidence of his/her approval thereof.

IN WITNESS WHEREOF, I have affixed my name as Secretary of the Company on 07/29/08.

Legal Name: Med-Depot, Inc. Date: 07/29/08

Signature: X [signature] Title: Corporate Secretary

LEASE GUARANTY: For the purposes of this Guaranty, I/ME/MY shall mean the person making the guaranty and if married, his/her marital community. YOU/YOUR shall mean the Lessor. I agree that I have an interest in the Lessee, economic or otherwise, and that you would not enter into this Lease without this guaranty. I unconditionally guaranty that the Lessee will fully and promptly pay all its Obligations under the Lease and any future leases with you when they are due and will perform all its other obligations under the Lease even if you modify or renew the Lease, or if any payments made by the Lessee are rescinded or returned upon the insolvency, bankruptcy or reorganization of the Lessee, as if the payment had not been made. You do not have to notify me if the Lessee is in default under provisions of the Lease. [illegible] I will immediately pay in accordance with the default provisions of the Lease all obligations due under the Lease. [illegible] UNDER THE LEASE FOR THE DETERMINATION OF ALL DISPUTES UNDER THE LEASE AND THIS GUARANTY. I agree and consent that you may serve legal process on you by registered or certified mail, which shall be sufficient to obtain jurisdiction. WE EACH WAIVE TRIAL BY JURY IN ANY ACTION RELATING TO THE LEASE OR THIS GUARANTY.

Signature

X N/A X

1. LEASE: You agree to lease from us and we agree to lease to you, the equipment listed above or on any schedule to this Lease (Equipment). You unconditionally promise to pay us the sum of all of the rental and other payments indicated above or on any schedule (Rent). You authorize us to insert in this lease any serial numbers and other identification data about the Equipment, as well as any other omitted factual matters or correct obvious errors. All Rent and other payments under this Lease or any other agreement with us (collectively Obligation(s)) are payable in U.S. dollars, and may be adjusted upward or downward no more than ten percent (10%) to reflect actual costs.

2. TERM OF LEASE: This Lease shall become effective upon acceptance by us by signing and dating this Lease. A Prorated portion of the aggregated average of the Rent based on a daily charge of one-thirtieth (1/30) of the Rent from the date of the Equipment has been delivered to you ("Commencement Date") to the end of the month shall be payable at the Commencement Date. The Base Term of this Lease shall begin on the first day of the month following the Commencement Date and terminate upon the expiration of the number of months stated under Base Term, above. Following the Commencement Date, Rent and other Obligation payments are due on the 1st, 8th, 15th, or 22nd of each month, payable to a location to be designated in writing. YOUR OBLIGATION TO PAY RENT TO US IS UNCONDITIONAL AND NOT SUBJECT TO ANY REDUCTION, SET-OFF, DEFENSE OR COUNTERCLAIM AND MAY NOT BE CANCELED FOR ANY REASON WHATSOEVER. In the event this lease is not fully completed for any reason beyond our control, all deposits made by you will be retained by us as compensation for documentation, processing and other expenses. We have the right, but not the obligation, to electronically withdraw funds from your bank account to pay for any unpaid Rent, taxes, fees, charges and assessments. You will provide us with any bank account information we request in order to process electronic payments. You may revoke our authorization to electronically withdraw funds by giving us ten (10) days prior written notice.

3. SECURITY DEPOSIT. As security for the payment of Rent, and performance of all the Obligations, you deposit with us the amount set forth in the section known as "Security Deposit". In the event you shall default in the performance of any of the Obligations, we shall have the right, but shall not be obligated to apply the security deposit to the curing of such default. On the expiration or earlier termination of this Lease, or any extension or renewal hereof, provided you have fully performed all of the provisions of this Lease, we will return to you any then remaining balance of the security deposit. We shall not be required to keep the security deposit separate from our general funds and you shall not be entitled to any interest on the security deposit.

4. NO WARRANTIES; NO AGENCY: WE ARE LEASING THE EQUIPMENT TO YOU AS IS. WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF NON-INFRINGMENT, MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE OR ORDINARY USE IN CONNECTION WITH THIS LEASE. You understand and agree that we are independent from the vendor, manufacturer and/or supplier (Supplier) of the Equipment and that neither the Supplier nor any other person is our agent, nor are they authorized to waive or change any term or condition of this Lease. You agree that no representation, guaranty or warranty by the Supplier or other person is binding on us. So long as you are not in default under any of the terms of this Lease, we transfer to you any warranties made to us, as the owner of the Equipment by the Supplier. You agree that any breach by the Supplier will not relieve or excuse your obligations to us. Regardless of cause, you will not assert any claim whatsoever against us for loss of profits you expected to make or any other direct, consequential, special or indirect damages. If you have entered into a maintenance agreement for the Equipment and the cost of the maintenance is included in the Rent, you acknowledge that we are not responsible for any service, repairs, or maintenance of the Equipment, and that we are not a party to the maintenance agreement. If you have a dispute regarding maintenance or service, then you will nevertheless continue to pay all Obligations as they become due.

5. UCC-ARTICLE 2A: You agree that this Lease is a "Finance Lease" under Article 2A of the Uniform Commercial Code as adopted by the State of California (UCC). You acknowledge that (a) we did not select, manufacture or supply the Equipment, but at your request we have purchased the Equipment that you are leasing from us. You agree that you have approved any purchase or supply contract between us and the Supplier before signing this Lease; or, if you have entered in to a purchase contract for the Equipment, you agree to assign it to us effective when we pay for the Equipment. You may have rights under the supply or purchase contract, and you may contact the Supplier for a description of those rights or any warranties. To the extent permitted by applicable law, YOU WAIVE ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON YOU UNDER UCC 2A-303 AND 2A-508 THROUGH 2A-522, INCLUDING WITHOUT LIMITATION, THE RIGHT TO: (i) REPUDIATE THE LEASE AND REJECT THE EQUIPMENT; (ii) REVOKE ACCEPTANCE OF THE LEASE; OR (iii) RECOVER DAMAGES FROM US FOR ANY BREACH OF WARRANTY.

PDF created with pdfFactory trial version www.pdffactory.com

6. DELIVERY OF EQUIPMENT: You agree to accept the Equipment when it is delivered and to sign the Equipment Acceptance supplied by us. We may at our discretion confirm by telephone that you have accepted the Equipment and this telephone verification of your acceptance of the Equipment shall have the same effect as a signed Equipment Acceptance.

7. ASSIGNMENT: YOU MAY NOT SELL, TRANSFER, ASSIGN OR SUBLEASE THE EQUIPMENT WITHOUT OUR PRIOR WRITTEN APPROVAL. We may sell, assign or transfer this Lease, or any part of it, and/or ownership of the Equipment without notifying you; and you agree that if we do, the new Lessor will have the same rights and benefits that we now have, and will not have to perform any of our obligations. You agree that the rights of the new Lessor will not be subject to any claims, defenses or setoffs that you may have against us. However, any such assignment, sale, or transfer of this Lease or the Equipment will not relieve us of our obligations to you under this Lease.

8. OWNERSHIP, RIGHTS, AND QUIET ENJOYMENT: You agree that we are the owner of and have title to the Equipment. You agree, at your expense, to protect and defend our title and other rights to the Equipment. Further, you agree that you will at all times keep the Equipment free from all legal process or lien if asserted or made against you or the Equipment. You shall have the right to quiet use and enjoyment of the Equipment for the Term of this Lease, provided you are not in default. We also have the right, at reasonable times, to inspect the Equipment at your expense.

9. CARE, USE AND LOCATION; LOSS OF EQUIPMENT: You are responsible for installing and keeping the Equipment in good working order and repair. You will keep and use the Equipment only at your address shown on this Lease, only for business or commercial purposes and in compliance with all applicable laws, ordinances or regulations. You will not make any alterations to the Equipment without our prior written consent, nor will you permanently attach the equipment to any real estate. You are responsible for protecting the Equipment from damage, and from any other kind of loss while you have the Equipment or while it is being delivered to you. In the event the equipment was lost, stolen or damaged, so long as you are not in default under this Lease, then you shall have the option within one week of such event to: (a) repair or replace the Equipment or (b) pay to us the unpaid balance of the remaining Rent under this Lease and our residual interest in the Equipment, discounted to present value at the rate of five percent (5%) plus any other Obligations.

10. TAXES AND FEES: You agree to pay when due all taxes, fees, fines, assessments and penalties relating to this Lease, including, without limitation, documentation fees, filing fees, credit fees, equipment inspection fees, early termination or assumption fees, title fees, name change fees, sales or property taxes, use taxes and business taxes. You also agree that we may estimate the yearly personal property taxes that will be due for the Equipment, and you agree to pay us the estimated taxes together with a processing fee as invoiced by us. If we pay any taxes, fines or penalties for you, you agree to reimburse us, together with a processing fee, on demand. Such fees may not only cover our costs they may also include a profit.

11. INDEMNITY: We are not responsible for any injuries or losses to you or any other person or property caused by the installation, operation, maintenance or use of the Equipment. You agree to reimburse us for and defend us against any claims for such losses or injuries, including, without limitation, those arising out of the negligence, tort, strict liability claims or any claim for patent, trademark or copyright infringement. This indemnity shall continue even after the term of this lease has expired.

12. INSURANCE: During the term of this Lease, you will keep the Equipment insured against all risks of loss or damage in an amount not less than the replacement cost of the Equipment, without deductible and without co-insurance. At our request, you will also obtain and maintain for the term of the Lease, comprehensive public liability insurance in amounts acceptable to us. We will be the sole lender loss payee named on the property insurance and named as additional insured on the public liability policy. You will pay all premiums for such insurance. If you do not provide such insurance, you agree that we have the right, but not the obligation, to secure insurance on the Equipment in such form and amount as we deem reasonable to protect our interests. You understand that, if we secure insurance on the Equipment the insurance may not name you as an insured and may not fully protect your interests. You agree that, if we secure insurance on the Equipment, you will pay an insurance charge that may be substantially higher than the premium that you would pay if you placed said insurance independently. You agree that, in addition to the premium, the insurance charge you are required to pay us will include an interest charge, administrative and processing fees, which will result in profit to us. You will give us certificates or other evidence of insurance when we request same, and such certificates shall provide that we shall be given 30 days advance notice of any cancellation, nonrenewable or other material change in the insurance. Should you wish us to waive this requirement we may bill you and you will pay a monthly property damage surcharge of up to .0035 of the original equipment cost related to our administrative costs, and credit risk and other costs and on which we may make a profit. As long as you are current at the time of the loss (excluding losses resulting from intentional acts), the remaining balance owed on the Agreement will be forgiven. You must be current to benefit from this program. NOTHING IN THIS PARAGRAPH WILL RELIEVE YOU OF YOUR RESPONSIBILITY FOR LIABILITY INSURANCE COVERAGE ON THIS EQUIPMENT. You grant us and our agents power-of-attorney in your name to apply for insurance benefits and endorse checks received in payment of insurance claims.

13. DEFAULT AND REMEDIES: If you: (A) do not pay any Obligation when due; (B) break any of your promises, representations or covenants under this Lease or under any other agreement with us; (C) become insolvent, assign your assets for the benefit of your creditors; (D) you or any guarantor enters (voluntarily or involuntarily) into a bankruptcy proceeding; (E) default on any obligations to any of your other creditors; (F) have made any representations to us with respect to any information provided in connection with this Lease or any other agreement with us that is not truthful at the time it is made or have omitted any material information with respect to your asset or liabilities, or any other information that would be considered material in the extension of credit; (G) are a corporation and more than 20% of the issued and outstanding voting capital stock is transferred to or acquired by any person or entity that is not an owner as of the date of this Lease; (H) any guarantor dies; or (I) you change your name, state of incorporation, chief executive office and/or place of residence without providing us with 30 days prior written notice of such change, you will be in default. In the event of a default by you, we can require that you return the Equipment to us and pay to us the remaining balance of all of the Rent due under this Lease, discounted to present value at five percent (5%), together with any other amounts due under this Lease. We can also require that you pay to us our residual interest in the Equipment. Interest shall accrue on all Obligations due us from the date of default until paid at the rate of eighteen percent (18%) per annum, but only to the extent permitted by law. We shall also be entitled to recover from you all damages caused by that default, including any of our income tax benefits. We can also use any of the remedies available to us under the UCC or any other law, including repossession of the Equipment or other Collateral. You agree to reimburse us for all charges, costs, expenses and attorney's fees that we have to pay to enforce this Lease or collect the Obligations under this Lease and in any lawsuit or other legal proceeding which we are required to bring or defend because of your default. You also agree that in the event of a dispute related to or arising out of this Lease, the Lessor in such dispute shall be entitled to recover its reasonable attorney's fees and costs. If we have to take possession of the Equipment, you agree to pay the cost of repossession, storing, shipping, reselling and selling the Equipment. You agree that we do not have to notify you that we are selling the Equipment. You also agree that we are entitled to abandon the Equipment if we reasonably believe it to be in our best interests.

14. OTHER RIGHTS: Time is of the essence in this Lease. You agree that any delay or failure by us to enforce our rights under this lease or any other agreements shall not prevent us from enforcing any rights at a later time. Both parties intend this Lease to be a valid and legal document, and agree that if any part is determined to be unenforceable, all other parts will remain in full force and effect. You also grant us a security interest in the Equipment and any proceeds of, accessions and attachments to the Equipment as a security for your Obligations. You agree that we may obtain information from credit reporting agencies at any time. You agree that, at your expense, we may file, with or without your signature, financing statements or other related filings in our name or in the name of any agent designated by us or our assigns in the form and content, and from time to time as we deem proper, listing you as Lessee or Debtor. You appoint us or our designee as your attorney-in-fact to execute and file, on your behalf, financing statements covering the equipment or any other collateral. Any notice required by this Lease or the UCC shall be deemed to be delivered when a record properly directed to the intended recipient has been (a) deposited with the US Postal Service, (b) transmitted by facsimile, (c) transmitted through the Internet; or (d) has been personally delivered.

15. LESSEE REPRESENTATIONS AND WARRANTIES: You hereby represent and warrant that at the time you sign this Lease you are and shall remain a business entity duly organized, validly existing and in good standing under the laws of the state of your organization, duly qualified to conduct business in every jurisdiction where you conduct business and are not subject to any bankruptcy proceeding and that your exact legal name, state of incorporation, location of your chief executive office and/or your place of residence as applicable, have been correctly identified to us. You further represent and warrant that at the time you sign this Lease the person executing the Lease or any related document on behalf of you or any related guarantor shall be authorized to take such action and bind you and the guarantor to the Lease, and that the execution, delivery and performance of this Lease is duly authorized by your organizational documents and, if necessary, resolutions of your directors and/or shareholders, partners, or managers and/or members.

16. RETURN OF EQUIPMENT; RENEWAL: If no default exists or has occurred under this Lease, you may, at the end of the original or any renewal term, purchase all (but not less than all) of the Equipment for its then fair market value, plus any applicable taxes unless a different End of Lease Option is granted to you in a separate addendum. At least 120 days prior to the end of the original term you must give us written notice via certified mail that you will purchase the Equipment or that you will return the Equipment to us. If you do not give us such written notice or if you do not purchase or deliver the Equipment in accordance with the terms and conditions of this Lease, then this Lease shall automatically renew for a 12 month term, and thereafter for successive [illegible] month terms until you deliver the Equipment to us. During such renewal(s), the Rent shall be the highest monthly rate set forth in this Lease. We may cancel the renewal by sending you a written notice 20 days prior to the effective date of the cancellation. If the Fair Market Value Purchase Option is available to you, we will use our reasonable judgment to determine the Equipment's fair market value. Any End of Lease Option may become null and void at our discretion if any event of default occurs or continues at any time during the original term of the Lease. Upon payment of End of Lease Option price, and if no default exists, we shall transfer our interest in the Equipment to you "AS IS, WHERE IS" without any representation or warranty whatsoever and this Lease will terminate. Provided you have given the required notice, and are not then in default, you shall return the Equipment, freight and insurance prepaid, to us in good repair, condition and working order, ordinary wear and tear expected, in a manner and to a location designated by us. Until the End of Lease Option price is actually paid, you will be responsible to continue to pay rent at the highest monthly rate set forth in this lease.

17. LATE CHARGE; FEES: If any part of any payment obligation is not made by you within (3) days of the due date, you agree to pay us up to fifteen percent (15%) of each such late payment (to the extent permitted by law). You agree to pay us the late charge not later than one month following the date that the obligation was first due. You agree to reimburse us for our reasonable expenses incurred in connection with this Lease, including but not limited to a documentation fee based on our currently schedule which is available upon your request.

18. ENTIRE AGREEMENT; CHANGES: This Lease contains the entire agreement between you and us, and it may not be altered, modified, terminated or otherwise changed except in writing by both of us. A limiting endorsement on a check or other form of payment will not be effective to modify the Obligations or any of the other terms and conditions of this Lease, and we may apply any payment received without being bound by such limiting endorsements.

19. COMPLIANCE; NOTICES: In the event you fail to comply with any terms of this Lease, we can, but we do not have to, take any action necessary to effect your compliance upon ten (10) days prior written notice to you. If we are required to pay any amount to obtain your compliance, the amount we pay plus all of our expense in causing your compliance, shall become additional obligations and shall be paid by you together with the next due rent payment. Any notices are required under this Lease, they shall be sufficient if given personally or mailed to the address set forth in this Lease by certified or registered mail, postage prepaid. This Lease is for the benefit of and is binding upon you and your personal representatives, successors and assigns.

20. CHOICE OF LAW; JURISDICTION: YOU AND WE AGREE THAT THIS LEASE SHALL BE BINDING WHEN ACCEPTED IN WRITING BY US AT OUR OFFICE AND GOVERNED BY THE LAWS OF THE STATE OF CALIFORNIA OR SHOULD WE ASSIGN THIS LEASE, THAT THIS LEASE SHALL BE INTERPRETED, AT OPTION OF THE ASSIGNEE, IN ACCORDANCE WITH THE LAWS AND REGULATIONS OF THE STATE OF ASSIGNEE'S PRINCIPAL PLACE OF BUSINESS. YOU AND WE EACH CONSENT TO THE JURISDICTION OF THE COURTS IN THE STATE AND COUNTY WHERE WE OR OUR ASSIGNEE MAY HAVE THEIR PRINCIPAL PLACE OF BUSINESS. YOU UNDERSTAND THAT YOUR SUBMISSION TO JURISDICTION DIRECTLY BENEFITS US AND RESULTS IN A REDUCED RENT. YOU ACKNOWLEDGE YOUR PAYMENTS TO US OR TO OUR ASSIGNEE AS A DELIBERATE ENGAGEMENT OF SIGNIFICANT BUSINESS ACTIVITY WITHIN THE STATE AND COUNTY OF THE PAYEE SUCH THAT YOU WOULD ANTICIPATE BEING SUMMONED INTO COURT WITHIN SUCH STATE AND COUNTY. SHOULD YOU BREACH ANY TERMS OR CONDITIONS OF THIS LEASE. UPON REQUEST OF OUR ASSIGNEE YOU AGREE TO EXECUTE A WRITTEN ACKNOWLEDGMENT OF THE APPLICATION OF THE LAW OF THE STATE IN WHICH OUR ASSIGNEE'S PRINCIPAL PLACE OF BUSINESS IS LOCATED AND THE JURISDICTION OF THE COURTS OF SUCH STATE OVER DISPUTES ARISING UNDER THIS LEASE. HOWEVER, YOU AGREE THAT WE WILL HAVE THE RIGHT TO COMMENCE ANY ACTION IN ANY COURT HAVING THE PROPER JURISDICTION FOR THAT ACTION. YOU AGREE AND CONSENT THAT WE MAY SERVE LEGAL PAPERS ON YOU BY REGISTERED OR CERTIFIED MAIL, WHICH SHALL BE SUFFICIENT TO OBTAIN JURISDICTION. WE EACH WAIVE TRIAL BY JURY IN ANY ACTION BETWEEN US.

21. REPRESENTATIONS AND COVENANT OF LESSEE: You represent that all financial and other information furnished to us was, at the time of delivery, true and correct. During the term of this Lease, you shall provide us with such interim or annual financial statements and filed tax returns or any other document that we deem necessary under normal course of business.

22. If this document was sent electronically, you hereby warrant that this document has not been altered in any way. Any alteration or revision to any part of this or any attached documents will make all such alterations or revisions non-binding and void. A facsimile of this agreement or related documents with signature may be considered to be original.

Lease No. ______________

INITIAL HERE: X [illegible]

PDF created with pdfFactory trial version www.pdffactory.com

# Exhibit 'A'

## Equipment Description

Lease Agreement #: ____________________

The following invoice(s) are referenced, and hereby incorporated, solely for the purpose of describing the equipment subject to lease agreement number referenced above. Capitalized terms not defined herein shall have the meaning given them in the Lease. By Signing below, lessee acknowledges that it is leasing the Equipment listed on the invoices(s) with all attachments, accessories and inclusions per invoice pursuant to the terms and conditions set out in the Lease.

| Equipment | Invoice # | Date | Vendor |
|---|---|---|---|
| Home Healthcare equip. | | | Invacare Corporation<br>33416 Treasury Center<br>Chicago, IL 60694 |
| Medical Equipment | | | Span America<br>70 Commerce Center<br>Greenville, SC 29615 |
| Home healthcare equip | | | Dalton Medical Corp<br>1103 Venture Ct.<br>Carrollton, TX 75006 |
| Rem Air Mattress & accessories | | | Mellen Air Manufacturing<br>2601 E. 28th St. Suite 307<br>Signal Hill, CA 90755 |
| (2) IRC5LX02 | | | Invacare<br>33416 Treasury Center<br>Chicago, IL 60694 |
| Medical Furniture, Rail, Wheel Chairs, Leg rests, shower Benches, walkers | | | Dalton Medical Corp<br>1103 Venture Ct.<br>Carrollton, TX 75006 |
| Medical Equipment | | | Span-America Medical Systems, Inc.<br>PO Box 5231<br>Greenville, SC 29606 |

All equipment, general intangibles and all modifications and attachments thereto and replacements therefore now and hereafter covered by the Equipment Lease Agreement dated as of ____________________ between Alliance Funding Group as Lessor and Med-Depot, Inc. as Lessee and all additional commitments related thereto.

Lessee: Med-Depot, Inc.

By: X [signature]
Alex Pendleton CFO

Date: 07/28/08

## LETTER OF AUTHORIZATION

Alex Pendleton, CFO is authorized and on behalf of Med-Depot, Inc. to lease equipment from Alliance Funding Group, Inc. and/or its assigns, purchased by Alliance Funding Group, Inc. and/or its assigns. This authorization includes, but is not limited to, signing all required documents in order to commence the lease.

The authorization shall remain in effect until Alliance Funding Group, Inc. and/or its assigns receives written notice of a change of authority.

Med-Depot, Inc.
Name of Company

[signature]
Signature

Vice President
Title

07/28/08
Date

CODE: 0328

PDF created with pdfFactory trial version www.pdffactory.com

**PROOF OF SERVICE**
**CCP 1013A(3) REVISED 5/1/88**
**ALLIANCE FUNDING V. MED-DEPOT, ET AL.**

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is: 3161 Michelson Drive, Suite 1500, Irvine, CA 92612-4414. My email address is kimm.kitchen@bryancave.com .

On August 25, 2010, I served the foregoing document(s) described as: **NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §§ 1441(b) AND 1446 (DIVERSITY)** on all interested parties in this action by placing [☒] a true copy [☐] the original thereof enclosed in sealed envelopes addressed as follows:

Cara J. Hagan, Esq.
Andrea M. Dumond, Esq.
HAGAN & ASSOCIATES
110 E. Wilshire Avenue, Suite 405
Fullerton, CA 92832

*Attorneys for PLAINTIFF*
Tel: (714) 526-3377
Fax: (714) 526-3317

[☐] BY CM/ECF NOTICE OF ELECTRONIC FILING: I caused said document(s) to be served by means of this Court's electronic transmission of the Notice of Electronic filing through the Court's transmission facilities, to the parties and/or counsel who are registered CM/ECF Users set forth in the service list obtained from this Court.

[☒] BY MAIL - As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Irvine, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[☐] BY FACSIMILE - I caused said document to be transmitted to a facsimile machine maintained by the office of the addressee(s) at the facsimile machine number(s) indicated. Said facsimile number(s) are the most recent numbers appearing on documents filed and served by the addressee(s). I received electronic confirmation from the facsimile machine that said document was successfully transmitted without error.

[☐] BY OVERNIGHT DELIVERY - Depositing the above document(s) in a box or other facility regularly maintained by FedEx in an envelope or package designated by FedEx with delivery fees paid or provided for.

[☐] BY PERSONAL DELIVERY - I caused such envelope to be hand delivered to the offices of the addressee.

[☐] BY EMAIL – I caused a true copy of the foregoing document(s) to be served by electronic email transmission at the time shown on each transmission, to each interested party at the email address shown above. Each transmission was reported as complete and without error.

[☐] STATE - I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

[☒] FEDERAL - I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on August 25, 2010, at Irvine, California.

Kimberly Kitchen Reyes

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

ALLIANCE FUNDING GROUP, a California corporation

**(b)** County of Residence of First Listed Plaintiff: Orange County
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
(see attachment)

## DEFENDANTS

MED-DEPOT, INC., an Oklahoma corporation; KENNETH BAKER, an indivual

County of Residence of First Listed Defendant: Oklahoma County
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)
(see attachment)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☒ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence

Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus - Alien Detainee
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**): 28 U.S.C. §§ 1332, et seq.

Brief description of cause: Plaintiff alleges a breach of contract.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $** 133,587.26

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE ______ DOCKET NUMBER SACV10-01302 RNB

DATE: 08/25/2010

SIGNATURE OF ATTORNEY OF RECORD: [signature]

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

# ATTACHMENT TO CIVIL CASE COVER SHEET

**BRYAN CAVE LLP**
Stuart W. Price (State Bar No. 125918)
Valerie K. Brennan (State Bar No. 248148)
3161 Michelson Dr., Suite 1500
Irvine, California 92612-4414
Telephone: (949) 223-7000
Facsimile: (949) 223-7100
E-Mail: swprice@bryancave.com
valerie.brennan@bryancave.com

Attorneys for Defendants
MED-DEPOT, INC., an Oklahoma corporation, and
KENNETH BAKER, an individual

**HAGAN & ASSOCIATES**
Cara J. Hagan (State Bar No. 146665)
Andrea M. Dumond (State Bar No. 258948)
110 E. Wilshire Avenue, Suite 405
Fullerton, CA 92832
Telephone: (714) 526-3377
Facsimile: (714) 526-3317

Attorneys for Plaintiff
ALLIANCE FUNDING GROUP, a California corporation

**PROOF OF SERVICE**
**CCP 1013A(3) REVISED 5/1/88**
**ALLIANCE FUNDING V. MED-DEPOT, ET AL.**

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is: 3161 Michelson Drive, Suite 1500, Irvine, CA 92612-4414. My email address is kimm.kitchen@bryancave.com .

On August 25, 2010, I served the foregoing document(s) described as: **CIVIL COVER SHEET** on all interested parties in this action by placing [☒] a true copy [☐] the original thereof enclosed in sealed envelopes addressed as follows:

Cara J. Hagan, Esq.
Andrea M. Dumond, Esq.
HAGAN & ASSOCIATES
110 E. Wilshire Avenue, Suite 405
Fullerton, CA 92832

*Attorneys for PLAINTIFF*
Tel: (714) 526-3377
Fax: (714) 526-3317

[☐] BY CM/ECF NOTICE OF ELECTRONIC FILING: I caused said document(s) to be served by means of this Court's electronic transmission of the Notice of Electronic filing through the Court's transmission facilities, to the parties and/or counsel who are registered CM/ECF Users set forth in the service list obtained from this Court.

[☒] BY MAIL - As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Irvine, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[☐] BY FACSIMILE - I caused said document to be transmitted to a facsimile machine maintained by the office of the addressee(s) at the facsimile machine number(s) indicated. Said facsimile number(s) are the most recent numbers appearing on documents filed and served by the addressee(s). I received electronic confirmation from the facsimile machine that said document was successfully transmitted without error.

[☐] BY OVERNIGHT DELIVERY - Depositing the above document(s) in a box or other facility regularly maintained by FedEx in an envelope or package designated by FedEx with delivery fees paid or provided for.

[☐] BY PERSONAL DELIVERY - I caused such envelope to be hand delivered to the offices of the addressee.

[☐] BY EMAIL – I caused a true copy of the foregoing document(s) to be served by electronic email transmission at the time shown on each transmission, to each interested party at the email address shown above. Each transmission was reported as complete and without error.

[☐] STATE - I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

[☒] FEDERAL - I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on August 25, 2010, at Irvine, California.

Kimberly Kitchen Reyes

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414